[Crim. No. 4681. In Bank. Feb. 8, 1946.]

## THE PEOPLE, Respondent, v. EARL BARNETT, Appellant.

Robert A. Zarick, Wallace Shepard and Thomas O'Hara for Appellant.

Robert W. Kenny, Attorney General, and Ward Sullivan, Deputy Attorney General, for Respondent.

SCHAUER, J.—Defendant was convicted by the court, without a jury, on twelve counts of an indictment, each of which charged him with a separate offense under section 288a of the Penal Code. Before, during, and following the trial defendant moved the court pursuant to the terms of section 5501 of the Welfare and Institutions Code to grant him a hearing to determine whether he is a sexual psychopath as defined by section 5500 of the same code. On each occasion

the motion, based upon affidavits of a brother of defendant to which were appended written statements of three physicians that they considered defendant to be a sexual psychopath, was denied. Thereupon judgment was pronounced and defendant was sentenced to the state prison. He appeals from the judgment of conviction and from an order denying a new trial, and attempts to appeal ''from the Court's order refusing to adjourn the proceedings and/or to suspend sentence for the purpose of hearing and determining whether or not the defendant . . . was and is a sexual psychopath.'' The latter order is, under the circumstances of this record, not appealable, but is reviewed on the appeal from the judgment.

Defendant's chief contention is that the court erred in denying his motion for a hearing to determine whether he is a sexual psychopath. Defendant argues also the sufficiency of the evidence to support his conviction on count three of the indictment. We have determined that upon the showing made defendant is entitled to the hearing he seeks, but that the conviction on count three is supported by the evidence.

The pertinent provisions of the Welfare and Institutions Code which relate to sexual psychopaths presently read as follows:

''Section 5500. As used in this chapter 'sexual psychopath' means any person who is affected, in a form predisposing to the commission of sexual offenses [against children], and in a degree constituting him a menace to the health or safety of others, with any of the following conditions:

'' (a) Mental disease or disorder.

'' (b) Psychopathic personality.

'' (c) Marked departures from normal mentality.''

(The words ''against children'' which appear in brackets in the above section were in effect at the time of the trial of this case but were deleted by amendment in 1945.)

''Section 5501. If, when any person is charged with a crime, either before or after adjudication of the charge, it appears by affidavit to the satisfaction of the court that such person is a sexual psychopath within the meaning of this chapter, the court may adjourn the proceeding or suspend the sentence, as the case may be, and thereupon proceed as provided by this chapter.

''The affidavit shall be substantially in the form specified for the affidavit of insanity in section 5051 [apparently ref-

erence to § 5049 is intended] and shall state fully the facts upon which the allegation that the person is a sexual psychopath is based. If the person is then before the court or is in custody, the court may order that the person be detained in a place of safety until the issue and service of a warrant of apprehension as provided by this chapter.

"The judge or justice presiding in such court shall issue and deliver to some peace officer for service, a warrant directing that the person be apprehended and taken before a judge of the superior court for a hearing and examination upon the allegation that the person is a sexual psychopath. . . .

"Section 5502. If, upon the hearing on the allegation of sexual psychopathy, the person before the court upon trial or under conviction, is found not to be a sexual psychopath, the court may proceed with the trial or impose sentence, as the case may be. If upon the hearing on the allegation of sexual psychopathy, the person is found to be a sexual psychopath, the court may suspend the proceedings and commitment to the Department of Institutions for placement in a State hospital shall proceed, according to the provisions of this chapter.

"Section 5503. The person alleged to be a sexual psychopath shall be taken before a judge of the superior court. . . . The judge shall then inform him that he is alleged to be a sexual psychopath, and inform him of his rights to make a reply to the allegation and to produce witnesses in relation thereto. . . .

"Section 5511. The alleged sexual psychopath shall be present at the hearing. . . .

"Section 5512. If, after examination and hearing, the judge believes that the person is a sexual psychopath, he shall make and sign an order that the person be committed to the Department of Institutions for placement in a State hospital for the care and treatment of the insane.

"Section 5512.5 Persons found by the court to be sexual psychopaths under this chapter shall have the same rights to jury trial as provided in this code for persons mentally ill or insane."

Provision is also made for examination of the alleged sexual psychopath by psychiatrists, for attendance of witnesses, and for payment of the expense of commitment, delivery, and care of the person at the hospital. Other sections set forth

the procedure to be followed in case of recovery of one who has been adjudged a sexual psychopath or in case the superintendent of the state hospital is of the opinion a sexual psychopath who has not recovered will not benefit from further treatment.

In support of his contention that the court erred in not granting a hearing to determine whether defendant is a sexual psychopath, defendant relies upon the proposition laid down in *People* v. *Haley* (1941), 46 Cal.App.2d 618, 622 [116 P.2d 498], to the effect that the provisions of the first paragraph of section 5501, quoted hereinabove, confer upon the court and, as a corollary, require the exercise of, a sound discretion to determine from the affidavit therein described whether defendant is a sexual psychopath and so entitled to a further hearing on the matter, and urges that in view of the uncontroverted allegations of the original affidavit of defendant's brother and of a supplement thereto and of the attached reports of physicians the court abused its discretion in denying to defendant the requested hearing.

The original affidavit states, among other things, that defendant is forty-five years of age, unmarried, and by occupation an architect; that affiant (who does not claim to be a medical expert) as a result of reading the transcript of the testimony taken before the grand jury upon which the indictment against defendant was returned and of reading the medical statements attached to the affidavit believes that defendant "is affected with a predisposition and uncontrollable desire and impulse to commit sexual offenses against children upon any and all occasions when by chance or otherwise he comes in contact with such children and the opportunity for the commission of said acts is present; is affected in a form predisposing to sexual offenses against children, to wit: That he shows marked departures from normal physical development, normal physiological development which in turn has produced marked departures from normal mentality. That the departures from normal mentality include but are not limited to disorder of his ideation, reasoning and judgment and comprehension concerning all things sexual; disorder in the emotional sphere in relation to sex: and disorder in the very instinctive basis of sex and the desires and impulses that lead therefrom.

"That an innate organic inability to profit by experience,

to fit into social patterns of behavior, or to respond to self discipline, together with the whole mental picture, indicate the presence of a psychopathic personality; that a review of the testimony taken before the Grand Jury, as aforesaid, indicates that the said Earl Barnett . . . for the past 30 or more years has been homosexual in the gratification of his sexual desires; that he has for more than five or six years last past persistently engaged in sexual offenses with and upon young boys ranging in age from 13 to 18 years old, such offenses including [various described lewd and unnatural practices] . . . but that the central core of his sexual aberration and variation consists of the fixation of attraction, ideation in both consciousness and in his dreams, of boys of 14 or of immature years.''

One of the medical statements, in which two physicians joined, reads as follows: ''[W]e are of the opinion that he [defendant] is a Sexual Psychopath within the meaning and intent of Section 5500 of the Welfare and Institutions Code. . . . [T]his individual . . . can be classified under well known and generally accepted medical rules with reference to his sex reactions and behavior. He suffers from a congenital condition technically known as inversion. He is an INVERT, a type of individual in whom not only is there defective microscopic brain structure, but in addition to this brain defect a congenital veriation in the structure of endocrine glands which have a determining effect upon character. Such persons all have psychopathic personalities and when their sex life is considered, are Sexual Psychopaths.

''. . . [T]his condition is congenital. It is inborn and exists in the microscopic structure of his body. He is in sexual matters an INVERT: i. e. one whose interest sexually has been turned congenitally by a power outside of him and apart from any consideration of free will from normal interest and satisfaction in the opposite sex to a condition where he is interested in, attracted by and obtains sexual satisfaction from his own sex. When this results in obvious and often unlawful, as well as shocking and indecent, anomalies in sexual behavior, such acts should be considered not as vicious manifestations of a perverted free will, but rather as the unfortunate and destructive results of a congenitally bad brain and glandular makeup under the influence of the bad habits of a corrupt environment.

''. . . [W]hile this inborn basis for inverted and anti-

social sex conduct may possibly serve to extenuate the purely moral dereliction involved in his conduct, it renders the individual so afflicted an even greater menace to society, in general, and to the age group of children which he prefers, in particular, than are individuals who may indulge in similar practices for reasons other than an inborn urge, for congenitally afflicted individuals such as the defendant will not abstain, when opportunity affords, from the aberrant sex practices characteristic of their inverted nature, because they can not.''

The other medical statement recites as the opinion of the physician making it that defendant ''presents: 1. Certain elements of mental disorder. 2. A psychopathic personality. 3. A marked departure from normal mentality. There are readily apparent anatomic and physiological abnormalities which lie at the basis of the above. . . . [Such abnormalities are then enumerated.] These anatomical and physiological abnormalities are congenital and they have determined in toto the evolution of his sex psychology. He is as he is, for exactly the same reason that a normal man is as he is . . . in the matter of sex. . . .

''Just as nature has broadened his pelvis . . . so has nature made him associate words one with the other in a feminine rather than masculine way. Given him the visual imagery of a woman, caused him to seek and retain knowledge that is feminine, caused him to respond to anger provocations more as a woman than a man. Given him likes and dislikes of a great number of sorts, which are common to the female rather than the male. Forced him to choose material for art work, writing, studying, travelling, in a female manner in the ratio of 10 to 2. Nature has so built him that authoritative scientific tests of the total masculinity or femininity in his nature given him a score 85 points away from the average masculine score. (Male average 52: female average 70: Barnett's score—*feminine 33*) Such a long list of abnormalities, variations or perversions of mind indicate 'certain elements of mental disorder' . . .

''On the basis of these abnormalities . . . this subject has found himself in opposition to established modes, customs and conventions of the society in which he lives. But, unable to change . . . he has not responded to self discipline: has been unable to profit by the experience of mental discomfort and anxiety; and has been unable to fit into social patterns.

This status of mind establishes him as a 'psychopathic personality.'

"Such things . . . mark the defendant as one with definite departures from normal mentality. The extent to which the abnormal mentality has expressed itself in untoward behavior moves us to state that the departures from normal mentality are marked.

"The analysis of his personality up to this point when coupled with perverted sexual behavior indicate that this man is a homosexual. . . ."

The supplemental affidavit, also made by defendant's brother, added no material facts but merely incorporated a copy of the transcript of the grand jury testimony, referred to in the original affidavit.

It is not contended that the trial judge was an expert in such matters. Nevertheless, he determined, contrary to the positive and undisputed statements of the three physicians, that defendant was not affected, in a form predisposing to the commission of sexual offenses and in a degree constituting him a menace to the health or safety of others, with either (a) mental disease or disorder, (b) psychopathic personality, or (c) marked departures from normal mentality. (Welf. & Inst. Code, § 5500.)

The People rely upon the declarations in *People* v. *Haley* (1941), *supra*, 46 Cal.App.2d 618, 622, that it is "not mandatory that the court shall adjourn the criminal proceeding when the affidavit is filed. The word 'may,' as it is used in that section [5501] should not be construed as a mandatory direction to the court regardless of the sufficiency of the showing. It is merely discretionary. Unless there is an abuse of that discretion the ruling of the court in that regard may not be disturbed on appeal." However, we are of the opinion that where, as here, an unequivocal and uncontradicted showing is made by the affidavit that the accused falls within the meaning of section 5500, the denial by the court (both before, during and *after* the trial) of the fuller hearing upon the issue, which is provided for by subsequent sections of the Welfare and Institutions Code, constitutes an abuse of discretion. (We do not imply that postponement of such a hearing until after the trial and adjudication of guilt would be otherwise than proper.)

Although there was some suggestion that the youths upon whom defendant committed the acts with which he was

charged, all of whom were between 14 and 18 years of age at the time of such acts, were not ''children'' within the meaning of section 5500 as it read at the time of the trial, it does not appear that the trial court based its denial of defendant's motions upon that ground. Moreover, the argument that the word ''children'' as used in this statute should be narrowed to exclude children of 14 years of age or over, if ever persuasive, has lost all substantiality by reason of the deletion of the word from the act by the amendments of 1945. It is apparent that the Legislature intended that the statute shall have liberal construction and application.

■ As stated hereinabove, the court, without a jury, found defendant guilty of the commission of twelve separate sexual offenses, and it cannot be seriously disputed that such offenses constituted him a menace to the health and safety of the boys against whom they were committed. The three physicians, experts in such matters, concurred in the opinion that defendant was congenitally affected with a condition resulting in a psychopathic personality and was therefore powerless to refrain from such offenses. One of the physicians was of the further opinion that defendant was also affected with mental disease or disorder and with marked departures from normal mentality. The conclusion that the trial court, in view of the strong showing made by defendant, abused its discretion in denying to him a full trial on the issue of sexual psychopathy appears inescapable. As declared in *Gossman* v. *Gossman* (1942), 52 Cal.App.2d 184, 194 [126 P.2d 178], ''Even within its legal limits the power [of judicial discretion] is not unbridled. The mere fact that a court may have jurisdiction to make an order does not equip it to exercise *judicial discretion*. Its acts must not only be confined within the field of *discretion* but must also be of a character within the bounds of the limiting adjective 'judicial.' To exercise that power all the material facts in evidence must be both known and considered, together also with the legal principles essential to an informed, intelligent, and just decision. On that basis then, and guided thereby, it gives latitude to the trial judge to express his own convictions in the declaration of rights and application of remedies.'' We are of the view that substantial justice, in a liberal interpretation and application of this remedial statute and in the light of the facts shown, requires that defendant be granted the hearing he requested.

■ Defendant contends also that the judgment finding him guilty of the offense charged in count three of the indictment is not supported by the evidence because the testimony of the boy with whom such alleged offense was committed established that he was an accessory thereto and, asserts defendant, such testimony lacks corroboration. The prosecution concedes that the witness was an accomplice to the acts described by him and that therefore his testimony must be corroborated under section 1111 of the Penal Code. However, defendant's contention that such testimony is uncorroborated is without merit. The indictment charged defendant with thirteen separate offenses under section 288a of the Penal Code, performed with various boys. Each count alleged the date "on or about" which the particular offense was committed and the name of the boy involved. Count six was dismissed upon motion of the prosecution. As stated above, defendant was found guilty on each of the other twelve counts. Count three alleged an offense with a named boy "on or about the 15th day of July, A.D. 1944." No other count alleged an offense committed in that month, or in any other summer month of 1944.

The boy named in count three testified in detail as to his participation with defendant at the latter's home during the summer of 1944 in the act charged in such count. Three other boys, who were named in other counts of the indictment and who the witness testified accompanied him to defendant's home in the summer of 1944, also testified in detail as to the unnatural practices of defendant. In addition, defendant freely and voluntarily admitted in his sworn statement to the grand jury, which was received in evidence at the trial, the commission of "immoral activities" during 1943 and 1944 with each of the boys named in the indictment and in particular admitted the perpetration during the summer of 1944 with the boy named in count three of the specific act charged in that count. Thus defendant's own testimony furnishes adequate corroboration of the offense described in the challenged count. (See 8 Cal.Jur. 178, § 256.) Moreover, defendant does not claim to have been misled or prejudiced by failure to prove more definitely the exact date of the particular crime, and at the trial made no objection on that account. Under such circumstances the judgment of conviction as to count three cannot be disturbed.

The judgment of conviction is reversed only insofar as it commits defendant directly to imprisonment in a state

prison and otherwise is affirmed as to all twelve counts. The order denying defendant's motion for a new trial is affirmed. The cause is remanded to the trial court with directions "to suspend sentence for the purpose of hearing and determining whether or not the defendant . . . is a sexual psychopath," to grant defendant the requested hearing, and after such hearing to commit the defendant to the Department of Institutions or to a state prison as may be determined according to law, and to make such other orders in the premises as may be meet. The purported appeal "from the Court's order refusing to adjourn the proceedings . . ." is dismissed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.