[Crim. No. 11318. Fourth Dist., Div. One. Nov. 20, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
LAWRENCE SINGLETON, Defendant and Appellant.

420

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Handy Horiye, Deputy State Public Defender, and Christopher Blake, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Harley D. Mayfield and Jay M. Bloom, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

LORD, J.*—In October 1978, the Stanislaus County Grand Jury returned an indictment charging Singleton with these offenses: Count I, forcible rape (Pen. Code,[1] § 261, subd. 2); count II, forcible oral copulation (§ 288a, subd. (c)); count III, kidnaping (§ 207); count IV, sodomy (§ 286, subd. (c)), count V, forcible oral copulation (§ 288a, subd. (c)); count VI, mayhem (§ 203); and count VII, attempted mur-

---

*Assigned by the Chairperson of the Judicial Council.

[1]All references to sections are to the Penal Code unless otherwise specified.

der (§§ 664, 187). The indictment also alleged that Singleton used a deadly weapon in committing the offenses charged in counts III, VI, and VII, and inflicted great bodily injury in committing the offenses charged in counts III and VII.

A plea of not guilty was entered to all counts. Because of the publicity attendant the case, a change of venue was granted to San Diego County. The trial resulted in a conviction in March 1979 on all counts. The jury found Singleton did not use a deadly weapon or inflict great bodily injury in the kidnaping but did use a deadly weapon in the commission of mayhem and attempted murder and also inflicted great bodily injury in the attempted murder. The attempted murder was found to be of the first degree.

In April 1979, Singleton's motion for referral as a mentally disordered sex offender under Welfare and Institutions Code section 6300 et seq. was denied. Thereupon he was sentenced to a total of fourteen and one-third years in prison as follows: Count VII, attempted murder, ten years, including six years for the offense, one year for the use of a weapon and three years for the infliction of great bodily injury; count I, rape, one and one-third years, consecutively; counts II and V, oral copulation, consecutive terms of one year each; count IV, sodomy, a consecutive term of one year. Sentences imposed on count VI, mayhem, and count III, kidnaping, were stayed pending completion of the sentences on the other counts. Singleton was credited with 225 days calculated upon 193 actual days' credit.

At trial the evidence disclosed that in September 1978, 15-year-old Mary V. was hitchhiking along a freeway in the San Francisco Bay Area, intending to go to Los Angeles by way of Interstate 5. Singleton, driving a van, picked her up. After a stop at Singleton's house in San Pablo, they went on toward Interstate 5. Mary fell asleep and on awakening discovered Singleton had passed by Interstate 5 and was going toward Nevada where, Mary learned, he also had a residence. Mary objected. They returned to the junction and proceeded south on Interstate 5. Singleton stopped along the highway and both got out to relieve themselves. As Mary was bending over to tie her shoe, Singleton struck her with his fist about the head and back several times. He threw her into the van, tied her hands behind her back and tore at her clothes. Singleton forced his penis into her mouth and then into her vagina.

Thereafter Singleton drove the van into a canyon and parked. He again forced his penis into Mary's mouth and into her vagina. Then he

committed an act of sodomy. Afterwards Mary kept asking Singleton if he would set her free. Singleton made her drink some liquor. She passed out and awoke to find herself being dragged about 50 yards from the van. Singleton cut the ropes from her hands. He took a hatchet, chopped off Mary's left hand, then her right. He threw her over the side of the road, climbed down, shoved her into a drainage culvert and told her she was free.

Mary made her way out of the culvert after Singleton left and after hours of wandering was discovered and given medical aid. She was hospitalized one month.

Singleton was identified through a description given by Mary. His residence in San Pablo was searched. Mary's cigarettes were found there and also remnants of burnt clothing that appeared to be hers. Meanwhile, Singleton cleaned up the van with the help of a neighbor at his Nevada residence. He removed the carpet and washed it and the inside of the van. A few days thereafter he tried to kill himself by an overdose of sleeping pills. Singleton was eventually taken into custody by the Nevada police.

Singleton's testimony was not offered at the trial but his statements to police officers were received. These statements were consistent with Mary's as to early events but went on to describe picking up two male hitchhikers, Larry and Pedro. Singleton said they stopped at a bar, bought some dope, smoked the dope and drank, stopped in a canyon and then paid for sex with Mary. Singleton said he thereafter passed out and awoke to find Larry driving the van toward San Francisco. Mary's clothes were in the van but she was gone. Larry told Singleton Mary had her hands in the till and was sent to Los Angeles. Singleton left the two hitchhikers in San Francisco.

Singleton makes four contentions on appeal. One is that the prosecutor made improper comments in argument about Singleton's failure to testify. The prosecutor, in closing argument, said: "That's why I gave these two challenges. I said if there is a way out for you, Mr. Singleton, then by Heavens you come out and say it. Your attorneys have the challenge of explaining the two hitchhikers you have spoken of during Mr. Singleton's statement to the police. They did not mention it. They had the challenge to talk about Mr. Singleton's state of mind, which as Mr. Singleton stated on his interview with the police that he was drunk and had passed out while two hitchhikers did it. And so we were to join

issue on that. And that, ladies and gentlemen, has not been touched on. Instead, who has been placed on trial? Mary V."

Singleton relies on *Griffin* v. *California* (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229], holding that comments on a defendant's failure to testify are error. *Griffin* does not, however, prohibit every comment on the failure to present a defense. ■ A prosecutor may comment on the state of the evidence or on the failure of the defense to introduce material evidence or to call logical witnesses. (*People* v. *Vargas* (1973) 9 Cal.3d 470, 475 [108 Cal.Rptr. 15, 509 P.2d 959].) So, too, may a prosecutor point out in final argument that defense counsel have been silent in their argument on crucial factors in the evidence, and thus have, presumably, no explanation to offer for these factors.

Singleton's statements to the police give rise to two possible defenses: That others committed the offenses charged and Singleton's capacity was diminished by intoxication. Reading the prosecutor's arguments as a whole, it is clear his challenges were directed to counsel to demonstrate why Singleton's statements should be deemed credible. In the prosecutor's language quoted above there is one phrase that could, with some strain, be interpreted as a suggestion Singleton should have presented his testimony. Assuming, however, that it was so interpreted by the jury, the evidence of guilt was overwhelming. The remark could not have had significant impact on the jurors. We find the prosecutor's comments were harmless beyond a reasonable doubt. (*Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]; *People* v. *Vargas, supra.*)

■ Singleton next contends the trial court abused its discretion in denying the motion to certify him for a determination whether he was a mentally disordered sex offender, pursuant to Welfare and Institutions Code section 6300 et seq. In support of the motion to certify Singleton submitted a psychiatrist's report which stated "...it is *possible* the defendant will meet the psychiatric criteria generally accepted in San Diego for classification as a mentally disordered sex offender." (Italics added.) But the court also had before it the report of another psychiatrist to the effect defendant "appeared well oriented in all spheres and showed no signs of any delusions, hallucinations, disturbances in memory... or thought processes." Furthermore, Singleton, age 51 at the time of the denial of the motion, had no prior history of sex crimes and according to the probation report considered by the trial court, had

a fairly normal sex life with episodes of violence apparently triggered by excessive use of alcohol.

Singleton cites *People* v. *Barnett* (1946) 27 Cal.2d 649 [166 P.2d 4], where an abuse of discretion was found in denying a motion to certify. In *Barnett*, however, the defendant was convicted of numerous sex offenses with multiple victims and three physicians reported their opinions to the trial court that the defendant was a sexual psychopath. *Barnett* is not comparable. There was no abuse of discretion here. (See, *People* v. *Vallez* (1978) 80 Cal.App.3d 46 [143 Cal.Rptr. 914].)

■ Singleton's third contention is the sentences imposed on counts II and V, oral copulation, are improper double punishment in contravention of section 654. On this point Singleton appears to argue the acts of oral copulation were used "as a means of committing" the ensuing rapes and sodomy and were not independent, separate crimes. He asserts the inference to be drawn from the evidence is that the oral copulations were not to achieve a separate sexual gratification but to achieve erection so that the rapes and sodomy could be committed. We cannot conclude this is the inference which must be drawn. "A defendant who attempts to achieve sexual gratification by committing a number of base criminal acts on his victim is substantially more culpable than a defendant who commits only one such act." (*People* v. *Perez* (1979) 23 Cal.3d 545, 553 [153 Cal.Rptr. 40, 591 P.2d 63]; *People* v. *Clem* (1980) 104 Cal.App.3d 337, 347 [163 Cal.Rptr. 553].) Sentencing on the counts charging oral copulation was not double punishment.

■ Singleton's final contention is that he was improperly sentenced under sections 664 and 187 for attempted murder, rather than for the more specific offense of assault with intent to commit murder under section 217 providing for a lesser penalty. He cites *People* v. *Montano* (1979) 96 Cal.App.3d 221 [158 Cal.Rptr. 47]; and *People* v. *Gray* (1979) 91 Cal.App.3d 545 [154 Cal.Rptr. 555], which do indeed support his contention. (See also the more recent similar decision in *People* v. *Lopez* (1980) 110 Cal.App.3d 1010 [168 Cal.Rptr. 378].) Section 664, the general attempt statute, applies only "where no provision is made by law for the punishment of such attempts." *Montano*, *Gray* and *Lopez* declare that where there is no evidence of any attempted murder other than an assault with intent to murder, a defendant is entitled to be punished under the more specific statute which expressly proscribes his conduct. The shocked legislative response to *Montano* and *Gray* was to repeal section 217 (Stats. 1980, ch. 300, eff. Jan. 1, 1981).

We are in agreement with the principle announced in *Montano, Gray* and *Lopez*; that is, a specific statute prevails over the general statute. But we are of the opinion that the principle was not applicable to the facts in those cases; nor is it applicable to the facts in the instant case. In the cases cited, as here, there *was* evidence of attempted murder other than an *assault* with intent to commit murder; i.e., the assaultive conduct exhibiting an intent to commit murder resulted in the use of force and in actual injury. The use of force and actual injury are not elements of the crime of assault with intent to commit murder. (Cf. *People v. Yeats* (1977) 66 Cal.App.3d 874, 878 [136 Cal.Rptr. 243].) A violation of section 217 is committed and the crime is complete when, with the requisite intent, there is "an unlawful attempt, coupled with present ability, to commit a violent injury on the person of another." (§ 240.) When force is used and actual injury is inflicted, the criminal conduct is more opprobious and the consequences to the victim and to society much graver. It is logical to presume that in enacting section 217 and in providing for a lesser penalty than that which may be imposed for attempted murder, the Legislature intended section 217 to punish conduct constituting an assault but falling short of actual force and injury. This was, we infer, perceived by the court in *People v. Meriweather* (1968) 263 Cal.App.2d 559 [69 Cal.Rptr. 880]. In *Meriweather* the defendant was charged with both attempted murder under sections 664 and 187 and assault under section 217. The evidence disclosed the defendant, having declared an intent to kill, fired a gun at the victim, causing three bullet wounds. On appeal, he contended it was error to convict him of attempted murder; that he should have been charged solely with assault with intent to commit murder and the trial court should have been limited to that charge. He urged, as does Singleton, that section 664 was intended by the Legislature to punish attempts only where no provision is made by law for the punishment of a particular attempt and, therefore, the enactment of section 217 made section 664 inapplicable. The court rejected the defendant's contention, holding that section 217 defined a crime distinct from attempted murder and stating: "It was proper, under the facts of the case and under the pleadings, for the trial court to have found the defendant guilty of both the crimes of attempted murder and assault with intent to commit murder."[2] (*People v. Meriweather, supra*, at p. 563.)

---

[2]The court went on to find the defendant was properly punished for the crime carrying the greater penalty (attempted murder) with a stay of execution for the section 217 violation pursuant to the provisions of section 654.

*Meriweather* was correctly decided. It is true Singleton could have been charged with and convicted of a violation of section 217, but it does not follow the evidence against him showed the commission solely of an assault. Furthermore, Singleton offers for the first time in this appeal to let himself be punished under section 217. Although assault with intent to commit murder is one form of attempted murder (*People v. Heffington* (1973) 32 Cal.App.3d 1, 11 [107 Cal.Rptr. 859]), it is not a necessarily included offense (*People v. Gray, supra*, 91 Cal.App.3d 545, 557). The trial court lacked jurisdiction to convict or sentence him for an offense which was neither charged nor included in the alleged crime (*People v. West* (1970) 3 Cal.3d 595, 612 [91 Cal.Rptr. 385, 477 P.2d 409]). Singleton was properly charged with, convicted of and sentenced for attempted murder.

Singleton claims he has not received all the days credit to which he is entitled (*People v. Sage* (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874]). The Department of Corrections should recompute his entitlement.

The judgment is affirmed.

Cologne, Acting P. J., concurred.

**STANIFORTH, J.**—I concur in the judgment but would add these further predicates for Justice Lord's sound conclusion that Singleton was properly sentenced for the crime he committed and was convicted—attempted murder in the first degree (Pen. Code, §§ 664/187). Singleton's contention, stripped of all verbage, is that he is entitled as a matter of law to be sentenced to a lesser term for the uncharged, untried, heretofore unmentioned offense of assault with intent to commit murder. (Pen. Code, § 217.)

This contention blithely ignores the 108-year history of unquestioned enforcement of each of the 2 statutes here under scrutiny as separate and distinct offenses. Singleton offers neither logic nor appeal to right reason to justify excision of the district attorney's authority and duty to charge, seek conviction and appropriate sentence for an attempted murder (Pen. Code, §§ 664/187) as the statute specifically provides, if he in good faith believes he has evidence to prove the elements of that crime.

Singleton reasons (1) "[t]he conviction and sentence for the general offense of attempted first degree murder rather than the more specific

offense of an ·assault with the intent to [commit] murder under Penal Code section 217 was error" and (2) Penal Code section 664 is limited in applicability to those cases where no provision is made for the punishment of attempts. This reasoning is flawed for each of the premises assumed are faulty.

Singleton was charged and found guilty of attempted murder in the first degree. He was *not* charged alternatively with, nor was the jury instructed or requested to be instructed on, the Penal Code section 217 offense of assault with intent to commit murder. Thus *People* v. *Meriweather* (1968) 263 Cal.App.2d 559, 563 [69 Cal.Rptr. 880]; *People* v. *Montano* (1979) 96 Cal.App.3d 221 [158 Cal.Rptr. 243]; *People* v. *Gray* (1979) 91 Cal.App.3d 545 [154 Cal.Rptr. 555]; and *People* v. *Johnson* (1978) 81 Cal.App.3d 380 [146 Cal.Rptr. 476], are not factually or legally in point. This case involves neither double conviction nor double punishment, therefore reference to Penal Code section 654 is irrelevant. The sole issue is whether the district attorney may charge an attempted murder, prove it factually beyond a reasonable doubt to a jury, then be met for the first time on appeal with the contention that defendant is entitled to be sentenced for an uncharged, untried, unproven offense.

Discussion

I

What in substance Singleton asks is to be resentenced upon an uncharged, untried offense where not a hint of this issue has been raised at the trial court level. No claim was made that a Penal Code section 217 charge, as a lesser included offense, was lodged in the allegations of the indictment. No instructions on a lesser included offense were requested. No request for sentence under Penal Code section 217 was made at any time. This issue is now raised for the first time on appeal. Singleton is precluded as a matter of law from now raising this issue. (*People* v. *Rogers* (1978) 21 Cal.3d 542, 547 [146 Cal.Rptr. 732, 579 P.2d 1048]; *People* v. *Maynarich* (1978) 83 Cal.App.3d 476, 480 [147 Cal.Rptr.823].)

II

If these omissions are overlooked, Singleton's contention remains still unsound. Attempted murder and assault with intent to commit murder are in law two separate distinct offenses. The first (attempted murder)

is of common law origin; the second has purely statutory beginnings but common law interpretations. Each offense has its own distinct and essential elements. This is true whether we use as a yardstick the statutory definitions or the judicial interpretation of code language.

In the first place, the intent requirements for attempted murder in the first degree, attempted murder in the second degree and assault with intent to commit murder are significantly different.

In *People v. Martinez* (1980) 105 Cal.App.3d 938, 942 [165 Cal. Rptr. 11], the court stated: "Several California cases and many criminal scholars have acknowledged a distinction between the intent required for the completed crime of murder and that required for a mere attempt." (Fn. omitted.)

And the author of the Annotation, What Constitutes Attempted Murder, 54 A.L.R.3d 612, 621, points out this verity: "Often at least as significant as statutes specifically dealing with attempts generally, attempts to murder, and related crimes, are the statutes defining murder in its various degrees, *since the degree of murder allegedly attempted has a strong bearing on the necessary allegations and proof relating to intent.*" (Italics added; fns. omitted.)

In *People v. Mize* (1889) 80 Cal. 41, 43 [22 P.80], the defendant was charged with Penal Code section 217, assault with intent to commit murder. The Supreme Court held: "'To constitute murder, the guilty person need not intend to take life; but to constitute an attempt to murder, *he must so intend.*' [Citation.] '*The wrong-doer must specifically contemplate taking life*; and though his act is such as, were it successful, would be murder, *if in truth he does not mean to kill, he does not become guilty of an attempt to commit murder.*' [Citation.]" (Italics added.)

The *Mize* rule has been followed for over 91 years and is sound law today. (See *People v. Weston* (1917) 32 Cal.App. 571, 578 [163 P. 691]; *People v. Miller* (1935) 2 Cal.2d 527, 530 [42 P.2d 308]; *People v. Dorsey* (1969) 270 Cal.App.2d 423, 428 [75 Cal.Rptr. 658]; *People v. Sartain* (1968) 268 Cal.App.2d 486, 489 [73 Cal.Rptr. 799]; *People v. Martinez* (1980) 105 Cal.App.3d 938, 942 [165 Cal.Rptr. 11].)

In *People v. Sartain, supra*, at page 489, it was held: "True it is that assault with a deadly weapon with intent to commit murder requires a

specific intent to kill (Pen. Code, § 217; *People v. Mize*, 80 Cal. 41, 44...; *People v. Pineda*, 41 Cal.App.2d 100, 104...; *People v. Alexander*, 41 Cal.App.2d 275, 281...), *however, the 'murder' which a defendant must intend need not show premeditation.* (See *People v. Bernard*, 28 Cal.2d 207, 214...; *People v. Hoxie*, 252 Cal.App.2d 901....)" (Italics added.)

And in *People v. Heffington* (1973) 32 Cal.App.3d 1, 11 [107 Cal.Rptr. 859], the court explained: "The crime of assault with intent to commit murder requires proof of a specific intent to murder, but without regard to any distinction between first and second degree murder. [Citations.] Both first and second degree murder require existence of the state of mind known as malice; aside from felony murder, a specific intent to kill is a necessary ingredient of first degree murder but not of second degree murder. [Citations.] Hence, it is incorrect to say that assault with intent to commit murder requires proof of specific intent to kill; more accurately, one should speak of specific intent to commit murder. [Citations.]"

Thus law of attempts requires a specific intent of the nature and quality as required for commission of the attempted crime. (*People v. Camodeca* (1959) 52 Cal.2d 142, 145 [338 P.2d 903].) Where the charge is attempted murder *in the first degree*, the intent, the state of mind, requisite to such offense must be that as would authorize conviction for murder in the first degree had the deed been accomplished.

And if greater weight of reason is needed, the annotator in California Jurisprudence 3d states: "[T]o establish a particular degree of a crime such as [attempted] first degree murder, or to make applicable a particular statutory provision for punishment," a specific intent is required. (17 Cal.Jur.3d, Criminal Law, § 60, p. 107.) In the case at bench the state of mind—the intent required by Penal Code section 189, paragraph 1, is an essential element of the proof of attempted murder in the first degree. Without such intent, an attempted murder in the first degree would not be committed, the greater punishment provided by section 664, subdivision 1, could not be imposed. At trial, distinctive instructions conformable to the different intent requirements are necessary. (*People v. Mize* (1889) 80 Cal. 41, 44-45 [22 P. 80].)

These two crimes are legally distinct for these further arcane reasons. An attempt to commit a crime is committed albeit for some reason not discernible to the wrongdoer, the crime is not capable of commission.

(*People* v. *Lee Kong* (1892) 95 Cal. 666 [30 P. 800]; *In re Magidson* (1917) 32 Cal.App. 566 [163 P. 689]; *People* v. *Grant* (1951) 105 Cal. App.2d 347, 355 [233 P.2d 660]; *People* v. *Fiegelman* (1939) 33 Cal. App.2d 100 [91 P.2d 156].) In contrast, an assault to be effective *must be coupled with the wrongdoer's present ability* to commit the violent injury. (Pen. Code, § 240; 20 Cal.Jur.3d, Criminal Law, § 1724, p. 250.)

The *present ability* to do the act threatened by an assault is not lacking because such act was in some manner prevented. (*People* v. *Yslas* (1865) 27 Cal. 630, 633, 634; *People* v. *Bradley* (1945) 71 Cal.App.2d 114, 120 [162 P.2d 38].)

The legislative drafters as well as the later judicial interpretations demonstrated a full knowledge of the legal definition of an "assault." (*People* v. *Yslas, supra,* 27 Cal. 630, 633, 634.) No harmful or offensive touching was or is required to commit an assault. Thus, a less egregious offense may be encompassed within a section 217 Penal Code charge.

The scholarly observations of further distinctions between an "assault" and an "attempt," are of little aid here (*In re James M.* (1973) 9 Cal.3d 517, 522 [108 Cal.Rptr. 89, 510 P.2d 33]), for the Legislature has since 1872 declared attempted first degree murder to be an offense punishable by imprisonment for a specified term while the crime of assault with intent to commit murder has been designated as an offense punishable by a specific lesser term. Subsequent amendments to these statutes have recognized this difference and maintained the relative relationship of greater to lesser penalty. A plethora of reported decisions have enforced these two statutes over a 108-year period and attest to the distinctiveness of the 2 offenses.

In sum, although assault with intent to commit murder may be related superficially to attempted murder, yet the Legislature has created and judicial interpretations have maintained two distinct offenses, *two distinct and most specific punishments.*

### III

A question remains whether assault with intent to commit murder is a *necessarily* included offense of the charged attempted murder requiring the trial court to treat *sua sponte* with Penal Code section 217.

Two types of necessarily included offenses have been recognized in this state. First, where an offense cannot be committed without committing another offense, the latter offense is an included offense. (*People v. West* (1970) 3 Cal.3d 595, 612 [91 Cal.Rptr. 385, 477 P.2d 409].) Second, a lesser offense is necessarily included if it is within the offense specifically charged in the information. (*People v. Cannady* (1972) 8 Cal.3d 379, 390 [105 Cal.Rptr. 129, 503 P.2d 585]; *People v. St. Martin* (1970) 1 Cal.3d 524, 536 [83 Cal.Rptr. 166, 463 P.2d 390]; Witkin, Cal. Criminal Procedure (1963) §§ 542, 543, pp. 553-555.)

The foregoing analysis of the precise elements of two crimes compels this conclusion: Attempted murder in the first degree does not necessarily encompass all of the essential elements of assault with intent to commit murder. Attempted murder can be (and was here) committed without an "assault" element being present.

It has long been the rule that an assault with intent to commit a crime necessarily embraces an "attempt"—in a generic sense, at least, if not in legal parlance—to commit that crime; but the converse is not equally true. An attempted murder under Penal Code sections 664/187 does not necessarily include an assault with intent to commit murder as defined by Penal Code section 217. (*People v. Akens* (1914) 25 Cal. App. 373, 374 [143 P. 795]; *People v. Rupp* (1953) 41 Cal.2d 371, 382 [260 P.2d 1]; *People v. Johnson, supra,* 81 Cal.App.3d 380, 388 [146 Cal.Rptr. 476]; *People v. Meriweather, supra,* 263 Cal.App.2d 559, 563 [69 Cal.Rptr. 880]; *People v. Provencher* (1973) 33 Cal.App.3d 546, 549 [108 Cal.Rptr. 792].) The pleadings here do not charge, nor did defendant perceive the indictment as charging a section 217 assault as a lesser included offense.

By either test, the assault with intent to commit murder was *not* a necessarily included offense of the charged attempted murder in the first degree; therefore Singleton has established neither a legal nor a factual basis to claim error. He was not entitled to *sua sponte* instructions on a noncharged Penal Code section 217 assault nor is he entitled now to demand the lesser sentence as provided in section 217. He could with equal lack of reason or authority argue a trial court duty to sentence him for simple assault or battery—or disturbing the peace.

### IV

Nor was the district attorney required to prosecute Singleton for the lesser offense of Penal Code section 217. He was entitled to charge

what in good faith he felt the evidence would prove. Whether to prosecute and what charge(s) to file are decisions that generally rest in the prosecutor's discretion. (*Daly* v. *Superior Court* (1977) 19 Cal.3d 132, 148 [137 Cal.Rptr. 14, 560 P.2d 1193].) To agree with Singleton's contention is to hold that a defendant has the power to determine what crime is to be charged against him. This is a power that "resides exclusively with the prosecution." (*People* v. *West, supra*, 107 Cal.App.3d 987, 993 [165 Cal.Rptr. 24]; see also *People* v. *Adams* (1974) 43 Cal. App.3d 697, 707 [117 Cal.Rptr. 905].)

"Just as a defendant has no constitutional right to elect which of two applicable federal statutes shall be the basis of his indictment and prosecution, neither is he entitled to choose the penalty scheme under which he will be sentenced." (*United States* v. *Batchelder* (1979) 442 U.S. 114, 125 [60 L.Ed.2d 755, 766, 99 S.Ct. 2198, 2204].)

V

Singleton's reliance upon *People* v. *Montano, supra*, 96 Cal.App.3d 221 [158 Cal.Rptr. 47], and its progeny is misplaced. The soundness of the *Montano* decision rests in part on the applicabilities of a rule of statutory construction, to wit: prosecution under a general statute is precluded by a special statute where the general statute covers the same matter as, and thus conflicts with, the special statute. (*People* v. *Ruster* (1976) 16 Cal.3d 690, 694 [129 Cal.Rptr. 153, 548 P.2d 353, 80 A.L.R.3d 1269].) This rule is irrelevant, has no application where disparate specific punishments are imposed for two distinct offenses. A special statute does not supplant a general statute unless *all* of the elements of the general statute are included in the special statute. (*People* v. *Gilbert* (1969) 1 Cal.3d 475, 480 [82 Cal.Rptr. 724, 462 P.2d 580]; *People* v. *Ruster, supra*, 16 Cal.3d 690, 694.) While Penal Code section 664 is in part a "general" section in that the one-half term is mandated for attempts generally, yet *where the attempted crime is murder in the first degree, section 664, subdivision 1, is most specific.* Where the maximum sentence for the crime attempted "is life imprisonment or death," such attempt is punishable not by the general "one-half" term *but by the most specific term of "five, six or seven" years.*[1] This then is no mere "general" sanction covering attempts generally but applies only to certain most specific crimes. Murder in the first degree is one of the very few crimes designated, singled out for this extreme penalty.

---

[1]Penal Code section 664, subdivision 1, was amended effective 1979 to increase these specific terms.

In what can be none other than clear and convincing evidence of profound disagreement with, disapproval of the misreading of the legislative mind by the *Montano* court, *the Legislature has repealed not only Penal Code section 217 but also Penal Code sections dealing with related assaults (Pen. Code, §§ 216 and 221) relied upon by the Montano court in determining not to enforce the greater penalty of attempted murder.* (See Stats. 1980, ch. 300, eff. Jan. 1, 1981.) This legislative act of repeal precludes, after January 1, 1981, judicial misreading of legislative intent at least as to the enforceability of the law against the crime of attempted murder. Unhappily in this process, the people of this state have lost several most precise weapons against assaultive crime.

## VI

Finally, if there is need for further lawful reason to deny Singleton's claim to a reduced sentence, then the substantial evidence rule provides it. The evidence must be viewed in the light most favorable to the jury's verdict of attempted murder. The act of chopping off the girl's arms— while evidencing a whole series of most heinous crimes—could, arguably, not show the requisite intent to commit murder in the first degree. It is Singleton's *act* of abandoning the bleeding, armless child in a wilderness, shoved in a tunnel that proves beyond reasonable doubt the requisite intent for attempted murder in the first degree. Although not of an assaultive quality, that malignant act supplies the requisite state of mind to meet the legal requisites of attempted murder in the first degree and thus warrants the greater punishment.

Singleton was correctly charged, fairly tried, and most mercifully dealt with on judgment day. I concur in affirming the judgment of conviction and sentence imposed.

Appellant's petition for a hearing by the Supreme Court was denied January 14, 1981.