[No. B114721. Second Dist., Div. Five. Apr. 29, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
DALE J. JUNG et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II through V.

COUNSEL

William D. Farber, under appointment by the Court of Appeal, for Defendant and Appellant Dale J. Jung.

Meredith J. Watts, under appointment by the Court of Appeal, for Defendant and Appellant Thi Van Nguyen.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, John R. Gorey and Christina Russotto, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

GRIGNON, J.—Defendant and appellant Dale J. Jung appeals from a judgment following two jury trials. In the first jury trial, defendant Jung was convicted of kidnapping (Pen. Code, § 207, subd. (a))[1] and mayhem (§ 203) and a great bodily injury allegation was found to be true (§ 12022.7, subd. (a)). The jury was unable to reach a verdict on the charge of torture (§ 206). In the second jury trial, he was convicted of torture. He was sentenced to life in prison. He contends the evidence was insufficient to support his conviction for torture; his life sentence constitutes cruel and unusual punishment; the trial court erred when it denied his request for a mistrial; and the trial court erred when it denied his requests for a continuance and to reopen, and struck the testimony of a witness.

Defendant and appellant Thi Van Nguyen appeals from a judgment following a jury trial. He was tried with defendant Jung in defendant Jung's second jury trial and was convicted of kidnapping, mayhem, and torture and a great bodily injury allegation was found to be true. He was sentenced to life in prison. He contends the evidence was insufficient to support his conviction for torture; the trial court erred when it denied his request for a mistrial; and the trial court erred when it denied his requests for a continuance and to reopen, and struck the testimony of a witness.

The prosecution raises issues concerning the restitution fines.

In the published portion of this opinion, we address the sufficiency of the evidence as to defendants' torture convictions. We conclude substantial evidence supports the finding defendants intended to cause the victim cruel or extreme pain and suffering. In the unpublished portion of the opinion, we

---

[1]All further statutory references are to the Penal Code, unless otherwise noted.

address the parties' remaining contentions. We modify the restitution fines and affirm.

## FACTS[2]

Fifteen-year-old Donald Hyon was a member of an Asian street gang called Jef-Rox. Defendant Jung was a member of another Asian street gang called Rebel Boys, and defendant Nguyen was a member of a third Asian street gang called Pinoy Real. Rebel Boys and Pinoy Real were allies, and rivals of Jef-Rox. In the evening hours of November 4, 1994, an altercation occurred between members of Jef-Rox and members of Rebel Boys and Pinoy Real. Hyon chased and beat defendant Nguyen. A short time later, defendants and others trapped Hyon in the garage of an apartment building. They beat and kicked Hyon, grabbed him by his hair and forced him to disrobe. They pulled the naked and struggling Hyon from the garage and pushed him into the backseat of defendant Jung's car, a black Acura Integra, where he was bound hand and foot and blindfolded. Defendant Nguyen beat Hyon with his fists. After some minutes of driving, they stopped the car, removed Hyon from the backseat, and placed him in the trunk. They drove for an additional period. Hyon was removed from the car and taken to a room in a residence.

The five to eight occupants of the room were laughing and jeering. They told Hyon he was going to die. They shoved Hyon onto a couch. They used his body as an ashtray, burning him with cigarettes on both shoulders three to four times. They beat him with their fists and kicked him. They repeatedly hit him on the head and in the face and slapped him. They laid him on the floor and five or six of them jumped on him from the couch. They forced him to drink urine. They bit him on his upper thighs and scratched him. They gave him hickeys on his neck. They put Ben-Gay on his penis, which hurt. They tattooed his back, legs, and arms extensively with a tattoo machine. The needle was painful. After tattooing him, they poured rubbing alcohol over his fresh wounds, which stung. They wrote on his body with magic markers. They shaved the hair on his head. They hit him with hard objects on his backside and legs. They whipped him with a cloth. They placed a hard object between his buttocks. They rubbed and played with his penis and attempted to have him ejaculate. They photographed him and forced him to dance and pose. They dressed him in girl's clothing. They continued to beat him. Hyon curled into a protective fetal position, yet they continued to kick him. On two occasions, defendant Jung told the others to stop hitting Hyon, but defendant Jung made the statements in a sarcastic manner and the beatings did not stop. The attacks continued for several hours, after which

---

[2]We have taken judicial notice of the trial court exhibits.

they put Hyon in a van, drove him to another location, and released him, still bound, blindfolded, and dressed in girl's clothing. They threatened to kill him and his family and burn his house down if he went to the police. The events of November 4, 1994, had been very scary. Hyon had been in fear.

The incident was reported to the police. Hyon was physically shaken up and bore lumps, tattoos, and hickeys on his body. Because of threats made by defendants and his embarrassment and shame, Hyon downplayed what had happened to him when he spoke to the police. He was uncooperative, reluctant, and resistant. He felt as if his bones were broken, but told the police he felt okay. Hyon refused the police's offer of medical treatment, but saw his pediatrician the next day. At the time of trial, Hyon still bore the tattoos. The photographs taken of Hyon by his attackers at the time of the incident were found in a photo album in defendant Jung's bedroom. The photographs in the album had been captioned. The captions included, "We Offer Only One Type of Treatment," "Cruelty to Animals Leads to Worse," "Battered, Raped, and Veiled," and "Weakness." The photographs reveal a huddled, crying, cringing, naked, blindfolded Hyon.

The defense was misidentification as to defendant Nguyen. As to defendant Jung, the defense was that he had not participated in the torture.

DISCUSSION

I. *Sufficiency of the Evidence—Torture*

 Defendants contend the evidence is insufficient to support a finding they intended to cause Hyon cruel or extreme pain and suffering. We disagree.

 "In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) The federal standard of review is to the same effect: Under principles of federal due process, review for sufficiency of evidence entails not the determination whether the reviewing court itself believes the evidence at trial establishes guilt beyond a reasonable doubt, but, instead, whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Jackson* v. *Virginia*

(1979) 443 U.S. 307, 317-320 [99 S.Ct. 2781, 2788-2789, 61 L.Ed.2d 560].) The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence. (*People* v. *Stanley* (1995) 10 Cal.4th 764, 792 [42 Cal.Rptr.2d 543, 897 P.2d 481].) ' "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt. ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' [Citations.]" ' [Citation.]" (*People* v. *Rodriguez* (1999) 20 Cal.4th 1, 11 [82 Cal.Rptr.2d 413, 971 P.2d 618].)

Section 206 provides: "Every person who, with the intent to cause cruel or extreme pain and suffering for the purpose of revenge, extortion, persuasion, or for any sadistic purpose, inflicts great bodily injury as defined in Section 12022.7 upon the person of another, is guilty of torture. [¶] The crime of torture does not require any proof that the victim suffered pain." Defendants do not challenge the sufficiency of the evidence as to the infliction of great bodily injury, nor do they challenge the sufficiency of the evidence as to the purpose of revenge. Their sole sufficiency of the evidence challenge relates to the intent to cause cruel or extreme pain and suffering.

"In section 206, the word 'cruel' modifies the phrase 'pain and suffering.' In at least two other cases, courts have held that 'cruel pain' is the equivalent to 'extreme' or 'severe' pain. [Citations.] This definition comports with the common dictionary definition of 'cruel' [citation], and, in our view, is a reasonable and practical interpretation of that phrase [citation]." (*People* v. *Aguilar* (1997) 58 Cal.App.4th 1196, 1202 [68 Cal.Rptr.2d 619].)

Defendants argue the evidence establishes an intent to humiliate, but not an intent to cause severe pain and suffering. Although some of the abuse inflicted on Hyon appears to have been intended to humiliate him, such as dressing him in women's clothing, forcing him to drink urine, and forcing him to dance and pose for photographs, the evidence also supports an intent to cause severe pain and suffering. Indeed, there can be no other explanation for the cigarette burns, the application of Ben-Gay to Hyon's penis, the pouring of rubbing alcohol over Hyon's fresh wounds, the beating, the biting, and the kicking. That defendants may have intended to humiliate Hyon, as well as cause him severe pain and suffering, does not defeat their convictions for torture. (Cf. *People* v. *Healy* (1993) 14 Cal.App.4th 1137, 1141 [18 Cal.Rptr.2d 274].) The evidence clearly supports a finding that in

retaliation for Hyon's earlier attack on defendant Nguyen, defendants intended to cause Hyon severe pain and suffering.[3]

Defendants argue the nature of the acts inflicted on Hyon is not comparable to the nature of the acts involved in other reported torture cases. For example, in *People v. Barrera* (1993) 14 Cal.App.4th 1555 [18 Cal.Rptr.2d 395], the defendant, in order to obtain the victim's cooperation and property, shot a robbery victim in the leg causing an open fracture of his tibia and thereafter forced the robbery victim to walk 15 feet to a shed to obtain a key. The victim was hospitalized for three days and his leg was cast. In *People v. Healey, supra,* 14 Cal.App.4th 1137, the defendant, over a two-week period, beat and battered the victim. "He split her lips, broke her ribs, and stomped on her. He struck her in the jaw, back, arms, neck repeatedly. He flung her in the air so that she landed on the back of her head on the floor. She sustained a fractured jaw, ankle fractures, multiple rib fractures and bruises to her face and torso." (*Id.* at p. 1139.) In *People v. Jenkins* (1994) 29 Cal.App.4th 287 [34 Cal.Rptr.2d 483], over a six-month period, defendant beat the victim repeatedly with various objects causing scars, lacerations, bleeding, bruising, broken bones, and a punctured lung. She was hospitalized for eight days.[4]

We agree Hyon apparently suffered no broken bones or injuries to vital organs. He was, however, greatly disfigured and scarred, not to mention severely emotionally traumatized. At the second trial in 1997, he was still unable to testify to the events in 1994 without a loss of composure. That Hyon suffered pain from the cigarette burns, the tattooing, the Ben-Gay and rubbing alcohol applications, the beating, the kicking, and the biting is self-evident, although the severity of the pain was not expressly acknowledged by Hyon. In any event, defendants wrongfully place the emphasis on the injuries or pain suffered by the victim. (*People v. Davenport, supra,* 41 Cal.3d at p. 268.) Section 206 expressly eliminates the pain of the victim as an element of the offense. In addition, all that is required as to the nature of the injury is "great bodily injury," i.e., "a significant or substantial physical injury." (§ 12022.7, subd. (e).) Abrasions, lacerations, and bruising can constitute great bodily injury. (*People v. Escobar* (1992) 3 Cal.4th 740, 752 [12 Cal.Rptr.2d 586, 837 P.2d 1100].) The emphasis is rightfully placed on

---

[3]We note that the jury was instructed as to a lesser offense of assault with a deadly weapon or with force likely to produce great bodily injury.

[4]First degree murder by torture cases are inapposite because the torture must have caused the death. (§ 189; *People v. Proctor* (1992) 4 Cal.4th 499, 530 [15 Cal.Rptr.2d 340, 842 P.2d 1100]; *People v. Davenport* (1985) 41 Cal.3d 247, 267 [221 Cal.Rptr. 794, 710 P.2d 861]; *People v. Wiley* (1976) 18 Cal.3d 162, 168 [133 Cal.Rptr. 135, 554 P.2d 881].) Obviously, torture which causes the death of the victim is by its very nature an extreme version of torture. (Cf. *People v. Mincey* (1992) 2 Cal.4th 408, 432 [6 Cal.Rptr.2d 822, 827 P.2d 388].)

the perpetrator, one who for revenge or other prohibited purpose, inflicts great bodily injury on the victim and intends to cause the victim severe pain and suffering. That other victims of torture may have suffered more than the victim in this case sheds no light on the sufficiency of the evidence of defendants' intent to cause Hyon severe pain and suffering. Here, the circumstances of the offense, including the forced disrobing, the confinement in the trunk of the car, the isolated location, the multiple attackers, the binding of hands and feet, the blindfolding, and the duration of the victim's ordeal, establish the intent to cause severe pain and suffering.

The intent of the perpetrator can be established not only by the circumstances of the offense, but also from other circumstantial evidence. (*People* v. *Raley* (1992) 2 Cal.4th 870, 888-889 [8 Cal.Rptr.2d 678, 830 P.2d 712]; *People* v. *Mincey, supra,* 2 Cal.4th at p. 433.) The other circumstantial evidence in this case is found in the photographs and the later-applied captions. References to violence and cruelty lead to the reasonable inference of intent to cause severe pain and suffering.

We conclude the evidence is sufficient.

II.-V.*

. . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgments of conviction are modified to show a parole revocation restitution fine of $10,000, suspended, and the clerk of the superior court is directed to correct the abstract of judgment to reflect both restitution fines and to forward the corrected abstract of judgment to the Department of Corrections. The judgments are affirmed in all other respects.

Turner, P. J., concurred.

**ARMSTRONG, J.**—I respectfully dissent.

I do not believe that the record contains substantial evidence that appellants intended to cause Hyon cruel or extreme pain and suffering, a necessary element of the crime of torture, or that the conduct for which appellants were convicted constitutes torture within the meaning of Penal Code section 206. Consequently, I would reduce their torture convictions to the lesser included offense of battery.

---

*See footnote, *ante*, page 1036.

As the majority notes, torture is a newly codified crime in California, created on June 5, 1990, when the California electorate passed Proposition 115 in response to the facts in *People* v. *Singleton* (1980) 112 Cal.App.3d 418 [169 Cal.Rptr. 333]. (See *Review of Selected California Legislation—Addendum—Proposition 115: The Crime Victims Justice Reform Act* (1990-1991) 22 Pacific L.J. 1010, 1012.) Penal Code section 206 defines torture as follows: "Every person who, with the intent to cause cruel or extreme pain and suffering for the purpose of revenge, extortion, persuasion, or for any sadistic purpose, inflicts great bodily injury as defined in Section 12022.7 upon the person of another, is guilty of torture. [¶] The crime of torture does not require any proof that the victim suffered pain."

In *People* v. *Barrera* (1993) 14 Cal.App.4th 1555 [18 Cal.Rptr.2d 395], the Court of Appeal considered a constitutional challenge to Penal Code section 206 on the grounds that it was vague and overbroad. The court noted that the statute enjoys "presumptive validity" and " ' ". . . is sufficiently certain if it employs words of long usage or with a common law meaning 'notwithstanding an element of degree in the definition as to which estimates might differ.' " ' " (*Id.* at p. 1563, citations omitted.)

The court in *People* v. *Barrera* concluded that " 'Torture' has a long-standing, judicially recognized meaning." (14 Cal.App.4th at p. 1563.) Quoting our Supreme Court in *People* v. *Tubby* (1949) 34 Cal.2d 72 [207 P.2d 51], the *Barrera* court continued: " 'Torture has been defined as the "Act or process of inflicting severe pain, esp. as a punishment in order to extort confession, or in revenge." (Webster's New Int. Dict. (2d ed.).) The dictionary definition was appropriately enlarged upon by this court in its original opinion in *People* v. *Heslen*, 163 P.2d 21, 27 in the following words: "Implicit in that definition is the requirement of an intent to cause pain and suffering in addition to death. That is, the killer is not satisfied with killing alone. He wishes to punish, execute vengeance on, or extort something from his victim, and in the course, or as the result of inflicting pain and suffering, the victim dies. That intent may be manifested by the nature of the acts and circumstances surrounding the homicide.". . .'

" 'In determining whether the murder was perpetrated by means of torture the solution must rest upon whether the assailant's intent was to cause cruel suffering on the part of the object of the attack, either for the purpose of revenge, extortion, persuasion, or to satisfy some other untoward propensity. The test cannot be whether the victim merely suffered severe pain since presumably in most murders severe pain precedes death.' (*People* v. *Tubby* (1949) 34 Cal.2d 72, 76-77 [207 P.2d 51].)" (*People* v. *Barrera, supra,* 14 Cal.App.4th at pp. 1563-1564.) The *Barrera* court concluded: "Torture

combines a specific state of mind with a particular type of violent conduct causing significant personal injury. . . . As written, section 206 continues the *Tubby* definition." (*Id.* at p. 1564.)

In order to secure a conviction for the offense of torture, the People are required to prove that the defendant intended to cause cruel or extreme pain and suffering. "A defendant's state of mind must, in the absence of the defendant's own statements, be established by the circumstances surrounding the commission of the offense. . . . The condition of the victim's body may establish circumstantial evidence of the requisite intent. 'In determining whether a murder was committed with that intent [to torture], the jury may of course consider all the circumstances surrounding the killing. Among those circumstances, in many cases, is the severity of the victim's wounds.' " (*People* v. *Mincey* (1992) 2 Cal.4th 408, 433 [6 Cal.Rptr.2d 822, 827 P.2d 388], citations omitted.)

Thus, for example, in *People* v. *Healy* (1993) 14 Cal.App.4th 1137 [18 Cal.Rptr.2d 274], the defendant's torture conviction was upheld based on the following conduct: "Over a period of approximately two weeks Healy battered Laura L. daily. He split her lips, broke her ribs, and stomped on her. He struck her in the jaw, back, arms, neck repeatedly. He flung her in the air so that she landed on the back of her head on the floor. She sustained a fractured jaw, ankle fractures, multiple rib fractures and bruises to her face and torso." (*Id.* at p. 1139.) Moreover, the severity of the victim's injuries was not the only evidence presented of the defendant's intent to inflict cruel or severe pain. The defendant also told the victim that "she never had any real hardship in her life, she was wasting potential because of it, she needed someone to help her to realize her potential, he knew how she could 'speed up the process,' and that 'he needed to create some hardship' to get her to listen to him." (*Id.* at p. 1141.) On those facts, the court found that there was ample evidence of the defendant's intent to inflict extreme and prolonged pain.

In affirming a conviction for first degree torture murder in *People* v. *Mincey, supra*, 2 Cal.4th 408, the Supreme Court ruled that the element of intent to cause cruel pain and suffering can be inferred solely from the condition of the victim's body provided that the wounds are sufficiently egregious to support the inference. The evidence there showed that the defendant beat the 5-year-old victim repeatedly over a period of 24 to 48 hours, resulting in hundreds of injuries, including stoppage of the intestinal tract and swelling of the brain. (*Id.* at p. 428.) While many of the injuries could have been caused by a hand hitting the victim, certain of them could only have been caused by a hard object, such as a board recovered from the

scene. The doctor who conducted the autopsy testified that the victim experienced prolonged pain before his death. (*Ibid.*)

In *People* v. *Raley* (1992) 2 Cal.4th 870 [8 Cal.Rptr.2d 678, 830 P.2d 712], the defendant locked two teenage girls in a basement safe, beat them with a club, stabbed them repeatedly, bound them, put them in the trunk of his car where they remained overnight, and threw them down a ravine. One victim died, having suffered 41 stabs wounds and a fractured skull. The other survived; she had been stabbed 35 times, had a punctured abdomen, lacerations to the head, chest and thighs, and contusions to the head. (*Id.* at pp. 882-884.)

In *People* v. *Jenkins* (1994) 29 Cal.App.4th 287 [34 Cal.Rptr.2d 483], the defendant was convicted, among other things, of torture of a cohabitant. Over a period of six months, the defendant had beaten the victim on the chest, arms, legs and face with a variety of objects, including an iron pipe, a hammer, a screwdriver, a .357 magnum and a brick. Among the victim's injuries were a collapsed lung, three to eight fractured ribs, a broken nose, swelling in both legs, puncture wounds on her legs, infections at the sites of the puncture wounds caused by the hammer and screwdriver, and scars on her face, chest and legs.

In *People* v. *Proctor* (1992) 4 Cal.4th 499 [15 Cal.Rptr.2d 340, 842 P.2d 1100], our Supreme Court found the following evidence sufficient to sustain a finding of torture murder: "In the present case, the victim was subjected to strangulation by two different methods, her wrists were bound so tightly as to cut into her skin, she was beaten in the face severely enough to have caused her eyes to be swollen shut and her lips to be swollen, she received severe blows to other parts of her body, and she suffered repeated, incision-type stab wounds to her neck, chest, and breast area." (*Id.* at p. 531.) These latter wounds were described as "a number of shallow stab wounds and incisions caused by dragging a weapon across the skin in the area of the neck. The curvature of some of the injuries indicated they had been inflicted slowly and deliberately." Indeed, the coroner who conducted the victim's autopsy testified that these wounds were inflicted for the purpose of causing pain or fear. (*Id.* at pp. 516-517.)

In the each of the foregoing cases, the defendant's intention to inflict extreme or cruel pain could be inferred from the circumstances of the case, including the nature, extent and severity of the wounds suffered by the victim. And in each case, the victim, if he or she survived the assault at all, suffered substantial, debilitating injuries: broken bones, punctured internal organs, multiple stab wounds and gunshot wounds.

As respondent notes, there is no requirement that the victim suffer pain in order for the defendant to be convicted of torture. (Pen. Code, § 206.) It is the People's burden, however, to establish that the defendant intended to inflict cruel and extreme pain. Here, the victim testified to the pain he suffered at the hands of his assailants:[1] Hyon said the assault "hurt." That testimony does not support an inference that the people who caused Hyon to "hurt" intended to inflict extreme and cruel pain on him. Neither do the circumstances surrounding the crime support such an inference: Appellants, together with their fellow gang members, bound and blindfolded Hyon and took him to an isolated location. They could do with him what they wished. They did *not* elect to inflict severe and prolonged physical pain on Hyon. Instead, they chose to humiliate him in various ways: forcing him to dance while wearing women's clothing and to drink urine, applying Ben-Gay to his penis, covering his body in alcohol, writing gang-related graffiti on him with felt markers, tattooing him and giving him hickeys. The prosecution presented no evidence that Hyon suffered substantial permanent physical injuries. To the contrary, the only evidence presented on the subject was that after being released, Hyon reported to the police that he felt "okay," and that the detective who interviewed Hyon shortly after the kidnapping did not see any major injuries to Hyon, and did not believe that Hyon needed emergency medical care.

Members of appellants' group did hit, kick, scratch and bite Hyon, burn him several times with a cigarette, and tattoo him during his captivity. The nature and severity of these actions, however, were not described at trial. The jury was not informed, for example, whether the burns on Hyon's shoulders caused blisters, or whether the bites and scratches broke his skin. These acts certainly constitute battery and mayhem. And while the injuries qualify as great bodily injury within the meaning of section 12022.7 (see *People* v. *Escobar* (1992) 3 Cal.4th 740, 752 [12 Cal.Rptr.2d 586, 837 P.2d 1100] [abrasions, lacerations and bruising can constitute great bodily injury]), they do not constitute torture.

The majority describe the victim as "greatly disfigured and scarred." I concur that scarring and disfigurement would in many cases constitute strong circumstantial evidence of an intent to inflict severe pain and suffering. (See, e.g., *People* v. *Singleton, supra,* 112 Cal.App.3d 418 [severed forearms]; *People* v. *Healy, supra,* 14 Cal.App.4th 1137 [fractured jaw, ankle and ribs, bruises to face and torso]; *People* v. *Jenkins, supra,* 29 Cal.App.4th 287 [fractured ribs, broken nose, puncture wounds on legs, scars on face, chest and legs].) Here, however, the evidence of disfigurement and scarring

---

[1]Because Hyon was blindfolded, he could not identify who among appellants' group actually assaulted him.

does not support the inference that appellants intended to inflict cruel pain on their victim: Hyon testified that he was burned with a cigarette once or twice on the shoulder, and that he was tattooed on the back, legs and arms. No evidence was admitted at trial concerning the severity of the cigarette burns or whether they left scars; photographs of Hyon admitted at trial show the tattoos. In my view, the record here does not support the conclusion that Hyon was "greatly disfigured and scarred," or the inference that the majority draws from that conclusion: that appellants intended to inflict severe pain on Hyon.

As the facts of the cases detailed above make clear, appellants' conduct simply did not come within the category of conduct, perhaps best described as inspired by pure evil, which the courts have determined to be torture, and which the electorate determined required a minimum life sentence. Penal Code section 206 was enacted by the People of the State of California in response to the particularly heinous facts of *People* v. *Singleton, supra*: The defendant kidnapped and sexually abused his victim, then chopped off her hands and dumped her in a ditch in a remote location. Miraculously, the victim survived. (*People* v. *Singleton, supra*, 112 Cal.App.3d at pp. 420-422.) The defendant was charged with and convicted of attempted murder, mayhem, kidnapping, and multiple sex crimes. He was sentenced to a total of fourteen years, four months in prison, and was paroled after having served just seven years in prison. (See *Review of Selected California Legislation—Addendum—Proposition 115: The Crime Victims Justice Reform Act, supra*, 22 Pacific L.J. 1010, 1013, fn. 23.) The new crime of torture was included as part of Proposition 115 "to insure that crimes such as Singleton's receive a minimum punishment of life imprisonment." (Sen. Com. on Judiciary, Assem. Com. on Public Safety, Joint Hearing on Crime Victims Justice Reform Act (1990) pt. 3, at p. 005.) Or, as stated in the Argument in Favor of Proposition 115 which appeared on the ballot, the proposition's " 'Singleton Torture Provision' assures that no criminal will ever again rape a young girl and hack off her arms, and serve only a minimal punishment, such as the 7-1/2 years Singleton served."

Penal Code section 206 was not enacted to redefine the legal definition of torture; that definition has remained constant throughout the years. (*People* v. *Barrera, supra*, 14 Cal.App.4th 1555, 1564.) Rather, the crime of torture was codified to ensure that conduct amounting to torture be punished by no less than life in prison, regardless of whether the victim happens to survive, as Lawrence Singleton's victim did. Appellant's conviction for torture does not satisfy the public will by ensuring that "crimes such as Singleton's receive a minimum punishment of life imprisonment." In no way can appellants' crimes compare to the brutality and depravity of Lawrence Singleton's.

In short, the evidence establishes that appellant committed battery and mayhem, and caused Hyon to suffer physical pain and acute emotional distress. It is not my intention to minimize either appellants' conduct or the victim's anguish. However, the evidence also establishes that appellants had an uninterrupted opportunity to inflict severe and prolonged physical pain on Hyon, but did not do so. Appellants did not testify to their intent to inflict cruel or extreme pain, and Hyon testified only that the assault on him "hurt," without any indication that the physical contact between him and his assailants was more than superficial and fleeting. The police officer who examined Hyon immediately after the assault testified that he observed no significant injuries, and that he concluded that Hyon required no emergency medical attention. Hyon himself told the officer that he felt fine. A reasonable juror could not infer from these facts that appellants intended to inflict cruel or extreme pain.

The dictionary definition of "hazing" is "to initiate or discipline (fellow students) by forcing to do ridiculous, humiliating, or painful things." (See Webster's New World Dict. (3d college ed. 1991) p. 620.) This precisely describes what appellants and their cohorts did to Hyon, a rival gang member rather than a fellow student. This conduct was patently offensive, and constitutes battery, as well as the additional crimes of kidnapping and mayhem, of which appellants were convicted.[2] However, to characterize appellants' actions against Hyon, as offensive as they were, as torture is to redefine, and minimize, the gruesome and sadistic nature of torture, which has long been recognized as among the most heinous of human conduct as exemplified by the facts of *People* v. *Singleton* and the other torture cases recounted herein. As the Court of Appeal observed in *People* v. *Barrera*, *supra*, 14 Cal.App.4th 1555, 1564, "Torture combines a specific state of mind with a particular type of violent conduct causing significant personal injury." I do not believe that either of these elements of torture are present in this case. Because my colleagues and I have such different views of the type of proof required for a torture conviction under Penal Code section 206, this case may warrant review by our Supreme Court.

On May 20, 1999, and May 25, 1999, the opinion was modified to read as printed above. Appellants' petitions for review by the Supreme Court were denied August 11, 1999.

---

[2]It is worth noting that the first jury to hear the evidence against appellant Jung, and which convicted him of mayhem and kidnapping, could not reach a verdict on the torture count. Moreover, the trial court, after hearing the evidence presented against appellant Jung on the torture count, was inclined to dismiss that count pursuant to Penal Code section 1385, but denied the motion to dismiss since Jung's retrial could simply be consolidated with appellant Nguyen's trial on the same count.