Filed 7/28/14  P. v. Kieu CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G048645 |
| v. | (Super. Ct. No. 11ZF0127) |
| CATHERINE KIEU, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Richard F. Toohey, Judge.  Affirmed as modified.

Christine Vento, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Kristen Kinnaird Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted defendant, Catherine Kieu, of aggravated mayhem (Pen. Code, § 205; all further statutory references are to Penal Code) and torture (§ 206). The jury also found defendant used a deadly weapon (§ 12022 subd. (b)(1)). The trial court sentenced defendant to life with the possibility of parole for aggravated mayhem, concurrently to life with the possibility of parole for torture, and one year consecutive for the deadly weapon enhancement.

Defendant raises three claims. First, she contends her torture conviction should be reversed because there was insufficient evidence she intended to cause cruel or extreme pain and suffering. Since the evidence supports a reasonable inference that defendant intended to cause cruel or extreme pain and suffering, we affirm this count.

Second, defendant argues the court violated section 654 when it sentenced her concurrently for aggravated mayhem and torture. Section 654 applies because defendant's actions formed an indivisible continuous course of conduct with one objective. We order the sentence on the torture charge stayed.

Third, defendant argues she was entitled to presentence conduct credits under section 2933.1. The Attorney General concedes this point and we agree.

FACTS

During their marriage, defendant and the victim had an active sex life. A year into their marriage, the victim announced he wanted a divorce. While the couple continued to live together, the victim rebuffed defendant's repeated sexual advances. Eventually, the victim filed for divorce.

The victim also began spending time with his former girlfriend. Defendant knew about these interactions because she recorded them on devices she had placed throughout the apartment and in the victim's car.

2

One evening, defendant served the victim a tofu and chicken dish for dinner that she had laced with Zolpidem—a sleeping medication. The drug caused the victim to become sleepy and to go to bed several hours earlier than normal.

When the victim awoke, he found his wrists and ankles were tied to the bedposts. Defendant pulled down the victim's shorts, cut off his penis, and tossed it on the carpet. Defendant then said, "You deserve it, you won't let me, you deserve it, you deserve it!" The victim testified he was terrified and in excruciating pain.

Defendant then asked, "[D]o you want me to take care of it or do you want me to call the police or 9-1-1?" The victim asked her to call the police. Defendant picked up the victim's penis, placed it in the garbage disposal, and ran the machine. She then called 911 and placed the phone so the victim could speak to the dispatcher. Defendant held a towel to the victim's crotch to stop the bleeding.

When the police arrived, defendant said, "He's in there and that he deserved it." The officers untied the victim from the bed and noticed abrasions on his wrists and ankles. Doctors were unable to salvage the victim's penis.

The defense presented evidence that defendant did not act with the requisite specific intent for each charge. This evidence primarily consisted of expert testimony that related defendant's background, i.e., losing her mother and being sexually molested as a child while living in war-torn Vietnam, and explaining how issues of mental illness, sex, and sexual molestation are viewed and treated in the Vietnamese culture.

DISCUSSION

*1. Requisite intent for torture*

Defendant argues the totality of the circumstances does not support an inference she acted with the requisite intent for the crime of torture, claiming there was

3

no prolonged attack, no statements to indicate intent, no violence except for the maiming, and no callous indifference in the face of the victim's need for medical attention. The facts contradict defendant's conclusions.

"'In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] Reversal on this ground is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]."'" (*People v. Wilson* (2010) 186 Cal.App.4th 789, 805.) This standard applies even "when the conviction rests primarily on circumstantial evidence." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) "'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.'" (*People v. Thomas* (1992) 2 Cal.4th 489, 514.)

"Every person who, with the intent to cause cruel or extreme pain and suffering for the purpose of revenge, extortion, persuasion, or for any sadistic purpose, inflicts great bodily injury as defined in Section 12022.7 upon the person of another, is guilty of torture. [¶] The crime of torture does not require any proof that the victim suffered pain." (§ 206.) Torture "does not require that the defendant act with premeditation or deliberation or that the defendant have an intent to inflict *prolonged* pain." (*People v. Pre* (2004) 117 Cal.App.4th 413, 420.) Absent direct evidence of such intent, the circumstances of the offense can establish the intent to inflict extreme or severe pain. (*People v. Hale* (1999) 75 Cal.App.4th 94, 106.)

The jury could reasonably infer defendant's repeated phrase, "you deserve it," while the victim was in excruciating pain meant defendant intended to cause *that*

4

pain. Additionally, defendant concedes the focus of her attack on a particularly vulnerable area would support an inference of intent. Defendant relies on *People v. Jung* (1999) 71 Cal.App.4th 1036, in which a court inferred intent to inflict extreme or severe pain based on, among other things, the duration of a several hour gang beating. (*Id.* at pp. 1039, 1041-1043.) Although defendant's offense was not as long as the gang beating in *Jung*, a jury could reasonably view the offense as beginning with drugging and tying up the victim—not a swift attack, as she argues. Each of these factors, when applied to the facts, supports a finding of the requisite intent for the crime of torture.

The evidence justifies the jury's guilty verdict on the crime of torture.


*2. Section 654*

Section 654, subdivision (a), provides that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Defendant argues this issue should be decided on the basis that it involves a single act. While tying up the victim, cutting off his penis, and destroying it in the garbage disposal constitute multiple "acts," we nonetheless agree section 654 applies. There is no substantial evidence defendant acted with separate objectives in committing both mayhem and torture. Regardless of how her acts are characterized and separated, they were a means of accomplishing a single objective—punishing the victim by destroying his penis.

"'Section 654 . . . applie[s] not only where there was but one "act" in the ordinary sense . . . but also where a course of conduct violated more than one statute and the problem was whether it comprised a divisible transaction which could be punished under more than one statute within the meaning of section 654.'" (*Neal v. State of California* (1960) 55 Cal.2d 11, 19, disapproved on another ground in *People v. Correa*

5

(2012) 54 Cal.4th 331, 334.) "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal v. State of California, supra,* 55 Cal.2d at p. 19.)

"[T]he application of *Neal*'s 'intent and objective' test is not algorithmic." (*People v. Jones* (2012) 54 Cal.4th 350, 374 (conc. opn. of Liu, J.).) Courts apply section 654 even when one could reasonably argue a defendant had multiple objectives. In *People v. Latimer* (1993) 5 Cal.4th 1203, the court applied section 654 when a man kidnapped and raped a woman. "It could be argued that defendant had two intents: (1) to drive the victim against her will to an isolated area, and (2) to rape her. . . . Although the kidnapping and the rapes were separate acts, the evidence does not suggest any intent or objective behind the kidnapping other than to facilitate the rapes." (*Id.* at p. 1216.) Similarly here, although the Attorney General reasonably argues defendant had multiple objectives, (1) causing extreme pain and (2) permanently maiming the victim, the evidence does not suggests any intent or objective behind drugging and tying up the victim other than to facilitate destroying his penis.

Further, there is no evidence that destroying the penis was done with the intent of causing any separate, additional pain. This is bolstered by the fact that, after severing the victim's penis, defendant came to his aid by slowing the bleeding with a towel and calling 911. Although the surrounding actions—drugging, tying, and destroying the severed penis—arguably caused the victim greater anguish and exacerbated the single injury (eliminating any chance the penis could be reattached), they were incident to a single objective, punishing the victim by destroying his penis.

Respondent argues we should apply *People v. Assad* (2010) 189 Cal.App.4th 187, where the court held section 654 did not apply to aggravated mayhem

6

and torture convictions based on repeated beatings over the course of days. Defendant's offenses arose from a continuous course of conduct as opposed to separate instances, with separate objectives, spread over days.

"The purpose of [section 654's] protection against punishment for more than one violation arising out of an 'act or omission' is to insure that a defendant's punishment will be commensurate with his culpability." (*People v. Perez* (1979) 23 Cal.3d 545, 550-551.) But this goal is not always met by how the law is applied. "A person who commits separate, factually distinct, crimes, even with only one ultimate intent and objective, is more culpable than the person who commits only one crime in pursuit of the same intent and objective." (*People v. Latimer, supra,* 5 Cal.4th at p. 1211.) Here, defendant may be more culpable than a person who cut off a victim's penis without additionally drugging and tying him up and later destroying the penis while he lay on the bed. But greater culpability is not dispositive. The operative question remains whether the defendant had multiple objectives.

"Whether [section] 654 applies in a given case is a question of fact for the trial court," and "[i]ts findings will not be reversed on appeal if there is any substantial evidence to support them. [Citations.] We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence." (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.) Here the trial judge declared, "I don't think [section] 654 applies." While we generally defer to the court's findings, in this case there is no substantial evidence defendant had multiple objectives. Defendant wanted to punish the victim by destroying his penis. Her actions could reasonably be divided into separate actions, but they all served a single objective. Thus, the separate sentence for torture must be stayed.

7

*3. Section 2933.1*

The parties agree the trial court erroneously relied on section 2933.5 to deny conduct credits. Section 2933.5 does not apply because defendant had no prior convictions. Under section 2933.1, presentence conduct credits "shall not exceed 15 percent of the actual period of confinement for any person" convicted of certain crimes, including mayhem and torture. (§2933.1, subd. (c).) Defendant was in custody for 719 days and is entitled to 108 days of presentence conduct credits.

DISPOSITION

The clerk of the Superior Court is directed to amend the abstract of the judgment to add 108 days of conduct credits and to stay the sentence on count 2 (§ 206), the stay is to become permanent upon the completion of the sentence on count 1 (§ 205). As so modified the judgment is affirmed.

RYLAARSDAM, J.

WE CONCUR:


O'LEARY, P. J.


THOMPSON, J.

8