Filed 12/1/20  P. v. Sambrano CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073264 |
| v. | (Super.Ct.No. INF1600826) |
| OSCAR FERNANDO SAMBRANO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Jeffrey Prevost, Judge. Affirmed.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Robin Urbanski and Yvette M. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

1

Oscar Fernando Sambrano physically abused his former girlfriend numerous times during their relationship. In May 2016, Sambrano struck her on the side of the face. The blow caused her severe pain, ringing in the ear, and hearing loss for several days. She didn't seek medical attention because she didn't want to be asked how she got the injury. Several years later, she still had difficulty hearing. Based on this incident of abuse, a jury convicted Sambrano of felony domestic violence and found he had inflicted great bodily injury—a sentencing enhancement which cost him an additional four years in prison.

Sambrano argues we should reverse the enhancement because there was insufficient evidence to support the jury's finding he inflicted great bodily injury. Specifically, he argues the prosecution was required to put on medical evidence regarding the injury. We conclude medical evidence is not required, and the evidence, including the girlfriend's testimony, was a sufficient basis for the jury to find she suffered a great bodily injury.

We therefore affirm the judgment.

## I

## FACTS

Sambrano and Jane Doe were in a relationship until June 2016. They lived together starting in 2014. Jane's daughter, Mary, who was born in 2002, lived with them for some of this time. According to Jane, Sambrano often became violent with her, and he sometimes did so in front of Mary. Jane put the number of abusive incidents at more than 100 over the years.

Jane first reported the abuse to police in July 2014, when Sambrano beat her with his fists and a wooden broom he swung like a baseball bat. Jane said he had abused her on earlier occasions, but she didn't report them because Sambrano had promised he would change. Based on the July 2014 incident, Sambrano was convicted of domestic violence, and the court issued a three-year domestic violence protective order.

It didn't work. Sambrano moved back in and in May 2015 assaulted Jane so badly on two occasions that she lost consciousness. The first time, she was washing clothes in the garage and they started arguing about her leaving. Sambrano came at Jane and hit her. Jane fell and her head struck their washing machine, causing her to lose consciousness. She woke up naked in Sambrano's bed the next day with no memory of how she got there. She had a big bump on her head, which caused her a lot of pain. Later the same month, Sambrano attacked her again when Jane confronted him about his treatment of her daughter. He struck her repeatedly and then grabbed her by the hair and hit her head against a block wall. He then pushed her onto the bed and continued hitting her. Jane fought back, but Sambrano choked her until she lost consciousness. She didn't report either incident to the police. She said she was afraid Sambrano would do something to her or her family.

At trial, Sambrano denied ever hitting Jane. Though he pled guilty to domestic violence in 2014, he said he did so only to get the case over with. He said the incident with the broom occurred after they had an argument and Jane threw a bottle of perfume at him. He used a broom to sweep up the broken pieces but denied hitting her. He denied

striking Jane's head on a washing machine and knocking her unconscious. He also denied choking her.

A year later, in May 2016, Sambrano and Jane were arguing about paying bills when he hit her on the right side of her face, near her ear. Jane said she experienced a lot of pain and lost hearing in her right ear. She heard a beeping and a ringing sound and couldn't hear at all for days. She told Sambrano she wanted to go to the hospital, but he told her she couldn't go because doctors would ask her what had caused the injury. Jane assured him she wouldn't tell them what happened and he allowed her to leave. Instead of going to the hospital, however, Jane took her daughter to a hotel so they would be safe. At trial, in April 2019, Jane said she still heard the beeping sound in her ear and experienced difficulty hearing.

Mary testified she had seen her mother's right ear covered with a white rag with tape around it and had heard her complain of difficulty hearing. She said Jane told her she had fallen down, but she didn't believe her mother. She said she knew Sambrano had hit her mother based on the abuse she had witnessed.

In a police interview, Sambrano admitted he had slapped Jane with an open hand on the side of the face near her ear. He confirmed Jane complained of the injury to her ear, and said she went to the hospital to receive treatment. At trial, he testified Jane arrived at their apartment intoxicated that night, and they had argued over his dating other women. He said Jane slapped him and he defended himself. He said his fingertips "just barely touched" her jaw. He said she hadn't complained of ear pain at the time, but a few

days later told him she was going to the hospital. Sambrano said he bought medical supplies for her ear injury when she returned, which she used to bandage herself.

Jane never did receive care for the injury from a medical professional. She explained that she didn't believe they could help her and thought going to the hospital would put her family at risk. "I knew if I went there, doctors are going to know I got hurt and they're going to report it. And if they report it, they're going to go straight to make a big report, and I knew that will happen, something will happen to me or my daughter, so I was scared to report it." She said Sambrano had explicitly threatened her family. "Oscar was texting me telling me, 'You better be in the hospital. If you tell anything to them, the truth, something is going to happen to your sister.'" He told her if she went to the police, he would burn down her sister's trailer, where her son lived. Jane believed he would carry out the threat. At trial, Sambrano denied telling Jane not to call the police or threatening Jane or her family members.

The following month, Sambrano began arguing with Jane as she got out of the shower. Sambrano wanted to have sex, but Jane said no. Sambrano turned Jane around, pushed her onto the bed, held her down with his body, and forcibly penetrated her anally as she cried, pleaded for him to stop, and told him he was hurting her. She said the penetration hurt a lot and when it was over and she got in the shower she saw a lot of blood. She didn't immediately report the incident to the police because she was scared. However, she did go to the police the following week, and the police arrested Sambrano.

Sambrano told the investigating officer that he decided to have sex with Jane when she came out of the shower wearing a towel. He initially claimed they had vaginal sex, denied she asked him to stop, and denied she bled. However, he later admitted he penetrated her anally, that she had bled, and that she did tell him it hurt and asked him to stop. Once he changed his story, he told police Jane always complained that anal sex hurt, and regularly bled as a result. At trial, Sambrano admitted having anal sex with Jane, but said it was consensual and she bled because she was on medication.

A week later, Jane reported the abuse to the police because she feared for her own life and the life of her daughter. She had learned Sambrano posted social media messages asking a friend to "fucking scare" her daughter and tell her to listen to her mother or else he would come back and "get her." When Jane confronted Sambrano with the messages, he admitted sending them but laughed and said no one would believe her. Sambrano told her he would "make that little bitch disappear" and would leave to Mexico. Sambrano later told the investigating officer he sent the messages trying to scare someone, but he wouldn't admit Mary was the target. Investigating officers found messages from Sambrano's social media account offering to pay a third party to "beat the shit out of . . . the . . . stupid girl" or at least "fucking scare her." At trial, Sambrano denied sending any social media messages threatening Mary.

Mary and Jane also said Sambrano had previously engaged in lewd conduct with Mary when she was 13 years old. Mary said he rubbed her leg, got her to massage his feet and legs, and tried to get her to touch his penis through his clothes. However, by the time

6

of trial she had trouble remembering details of these events. She did remember getting upset and going into the bathroom and crying. Mary told her mother, but Sambrano denied it, and Jane didn't believe her at the time.

For his part, Sambrano testified that Jane was the aggressor in the relationship, and often slapped and pushed him. He accused her of sending three masked men to attack him in June 2016, shortly before she reported him to the police. He said one of the men placed something at his back and instructed him to go inside the house and get on his knees. According to Sambrano, Jane came in, walked straight up to him, slapped him, said "Motherfucker, we're going to have some fun with you," and then spit in his face. He said she got a knife from the kitchen, grabbed his head, and said, "If I want to at this very moment, I could hurt you, but first we're going to have some fun." The men then played Russian Roulette with Sambrano, commenting he was lucky when the gun didn't fire. They then forced Sambrano to watch as Jane removed her clothing and she and the men touched each other sexually. When the men were preparing to leave, Jane struck Sambrano's face and knocked out a molar. Jane and the men threatened to kill him if he went to the police or kicked Jane out of the house. Sambrano also accused Jane of imprisoning him a few days later. He said she took his phone and prevented him from leaving the house for three days by threatening to hit herself and call the police to report him for abuse.

After his arrest, the Riverside County District Attorney's Office charged Sambrano with three counts of corporal injury to a cohabitant (Pen. Code, § 273.5, unlabeled statutory citations refer to this code), causing great bodily injury (§ 12022.7, subd. (e)), with a prior domestic violence conviction (§ 273.5, subd. (f)), soliciting someone to commit kidnapping and murder (§ 653f, subd. (a)), dissuading a witness (§ 136.1, subd. (b)(1)), sodomy by force or violence (§ 286, subd. (c)), lewd and lascivious conduct on a child under the age of 14 (§ 288, subd. (a)), annoying or molesting a child under the age of 18 (§ 647.6, subd. (a)), and violating a domestic violence restraining order (§ 166, subd. (c)(1)).

A jury convicted Sambrano of two counts of inflicting corporal injury on a cohabitant with a prior domestic violence conviction and found true the great bodily injury enhancement as to the count related to the incident when he hit Jane's ear. They also convicted Sambrano of witness dissuasion, sodomy by force, lewd and lascivious conduct on a child, annoying or molesting a child, and violating a domestic violence restraining order.

At the sentencing hearing on July 12, 2019, Sambrano asked the court to strike the punishment for the great bodily injury enhancement based on the lack of medical evidence. The court declined and imposed a total prison term of 19 years 4 months—four years for the domestic violence charge, four years for the great bodily injury enhancement, and another 11 years 4 months for the other convictions. Sambrano filed a timely notice of appeal.

8

## II

## ANALYSIS

Sambrano argues there is insufficient evidence to support the jury's finding that he inflicted great bodily injury because the prosecution didn't put on any medical evidence.

Faced with a challenge to the sufficiency of the evidence, we review the entire record to determine whether it contains substantial evidence which would allow "a reasonable trier of fact [to] find the defendant guilty beyond a reasonable doubt." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) Substantial evidence is "evidence that is reasonable, credible, and of solid value." (*Ibid.*) The same standard applies when a defendant challenges the sufficiency of the evidence supporting a sentence enhancement. (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60.)

A great bodily injury is "a significant or substantial physical injury" (§ 12022.7, subd. (f)), a "substantial injury *beyond* that inherent in the offense." (*People v. Escobar* (1992) 3 Cal.4th 740, 746.) The injury doesn't have to be so grave as to cause the victim "'permanent,' 'prolonged,' or 'protracted'" disfigurement, impairment, or loss of bodily function." (*Id*. at p. 750.) "Abrasions, lacerations, and bruising can constitute great bodily injury." (*People v. Jung* (1999) 71 Cal.App.4th 1036, 1042, citing *Escobar*, at p. 752.)

"Proof that a victim's bodily injury is 'great' – that is, significant or substantial within the meaning of section 12022.7 – is commonly established by evidence of the severity of the victim's physical injury, the resulting pain, *or* the medical care required to treat or repair the injury." (*People v. Cross* (2008) 45 Cal.4th 58, 66, italics added.) The

9

necessity of medical treatment for the victim's injury is relevant, but not required, to demonstrate the existence of great bodily injury. (*People v. Wade* (2012) 204 Cal.App.4th 1142, 1150 (*Wade*).)

It's up to the jury to discern the "'fine line [that] can divide an injury from being significant or substantial from an injury that does not quite meet the description.'" (*People v. Cross*, *supra*, 45 Cal.4th at p. 64.) The jury's determination of great bodily injury "rests on the facts as presented at trial in the context of the particular crime and the particular injuries suffered by the victim." (*Id.* at p. 65.)

Sambrano's evidentiary challenge rests entirely on the fact that the jury found Jane suffered a great bodily injury based on her testimony and without corroborating medical records or testimony from a treating physician. However, it's well established that "[e]xcept where additional evidence is required by statute, the direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact." (Evid. Code, § 411; see also *People v. Miranda* (2011) 199 Cal.App.4th 1403, 1418 ["The testimony of one witness is sufficient to prove any fact"].) Section 12022.7 doesn't except proof of great bodily injury from this general principle of evidence, and Sambrano points to no other statutory provision that does so.

As the *Wade* court explained "the statutory definition and relevant CALCRIM instruction (No. 3160) do not *require* a showing of necessity of medical treatment" to establish a great bodily injury, and that they were not "aware of any case authority imposing such a requirement." (*Wade*, *supra*, 204 Cal.App.4th at p. 1150.) If obtaining

10

treatment is not required, evidence concerning such treatment cannot be required either. It follows, that the jury was entitled to credit Jane's testimony about the nature and extent of her injury, and that her testimony that she suffered severe, continuing pain and sustained hearing loss was sufficient to find Sambrano inflicted great bodily injury when she hit Jane in the ear.

There is of course no question that evidence of medical treatment is relevant to whether a victim suffered great bodily injury. If Jane had sought immediate medical care and supplied medical records corroborating her injury and her complaints of lost hearing, the prosecution would have had very powerful evidence she suffered great bodily injury. But victims of domestic violence are not required to seek medical treatment to later seek protection under the law. Jane testified Sambrano struck her on the side of her face near her right ear and that she immediately suffered severe pain, heard a ringing in her ear, and lost hearing for several days. Several years later, at the time of the trial, she said she still had difficulty hearing in her right ear. That testimony was a sufficient basis to find she suffered a great bodily injury.

It bears emphasizing Jane's testimony was not without corroboration. Though she didn't seek medical attention, she did complain of the pain to both Sambrano and her daughter. Both witnesses confirmed the injury and also confirmed her testimony that she bandaged the ear herself. Sambrano admitted he purchased the medical supplies for her. Thus, the evidence of the severity of Jane's injury is more substantial than Sambrano allows.

More, Sambrano was able to use the fact that she didn't seek treatment or provide medical evidence to undermine her credibility. Jane responded to questions about why she didn't seek medical attention for her ear by explaining she didn't think it would help her and that she feared the consequences of reporting the abuse. She said Sambrano explicitly threatened her sister and said if she reported the abuse he would burn down the home of her sister and son. The jury could have disbelieved this testimony and determined Jane was exaggerating her injury. Their verdict makes plain they instead credited her testimony, as they were entitled to do.

**III**

**DISPOSITION**

We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH _____
J.

We concur:

CODRINGTON _____
Acting P. J.

FIELDS _____
J.