Filed 5/21/13  P. v. Persons CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SAMUEL LEE PERSONS,<br><br>    Defendant and Appellant. | B237741<br><br>(Los Angeles County<br>Super. Ct. No. PA058905) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Harvey Giss, Judge.  Affirmed.

Brett Harding Duxbury, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Noah P. Hill, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Samuel Lee Persons was convicted by a jury of first degree murder and torture and sentenced to an aggregate state prison term of 61 years to life. On appeal Persons contends the trial court misstated the People's burden of proof in response to an objection during closing argument and improperly instructed the jury on aiding and abetting and torture. He also contends the prosecutor misstated the law of provocation in closing argument. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *The Information*

Persons was charged in an amended information with murder (Pen. Code, § 187, subd. (a))[1] and torture (§ 206). The information specially alleged Persons had suffered a prior serious felony conviction within the meaning of the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and section 667, subdivision (a), and had served six separate prison terms for felony convictions (§ 667.5, subd. (b)). Persons pleaded not guilty and denied the special allegations.

2. *The Evidence at Trial*

Beatrice Brothers lived in her own home with her adult son, Sidney Cole. Bobby Gates lived in a converted garage in the back of the house along with his girlfriend, Catherine Hoskins, and Hoskins's sons, John and Antwan. Brothers's daughter, Lachelle Robinson, lived in a house across the street with her daughter, Mimi.

In the early morning of December 5, 2005, after John had told his mother and Brothers that Gates had done something to him that he "did not like," Brothers confronted Gates in her living room and accused him of molesting John and Mimi. After being summoned by Brothers, Persons and his nephew, Christopher Yancy, arrived at the house; and Brothers and Hoskins told them Gates had molested the children.

Persons tied Gates to a chair and placed a rubber ball in his mouth to prevent him from speaking. When the ball fell out, Brothers put it back in and secured it by tying a sock around Gates's mouth. Brothers, Persons and Yancy started beating Gates.

---

[1]     Statutory references are to the Penal Code.

Brothers hit him in the head with a broomstick 10 times with such force that the stick broke in half. Persons hit Gates in the face with his fist. Robinson interrupted the attack, telling them to "wait" and reminding them the children were in the house. Brothers told her they could not wait, they had to "do this now." Then, Brothers, Persons, Hoskins and Yancy took Gates back to the garage.

Robinson peered in the garage and saw Persons and Yancy taking turns brutally kicking Gates while he lay on the floor. Robinson also saw Brothers's dog, a pit-bull, jumping on Gates and biting him.

Persons told police that, during the attack in the garage, Brothers and Hoskins sodomized Gates with a heated rod. Yancy poured rubbing alcohol on Gates's stomach, then lit a match and set him on fire. When Gates started screaming, Yancy gagged him with something. Persons said he did not really participate in the beating in the garage. Brothers and Yancy, on the other hand, were "out of control." The group did not plan on killing Gates; they just wanted to teach him a lesson for molesting children. Gates died during the course of the attack. Brothers and Yancy dumped the body near the freeway and set it on fire.

Paul Gliniecki, a deputy coroner with the Los Angeles County Coroner's Office, testified Gates had suffered blunt force trauma to his head, face, neck, torso, pelvis, arms and legs and had burns all over his body. A gag was found stuffed in his throat. According to Dr. Gliniecki, concentric marks on Gates's back were consistent with having been burned by a cigarette or the end of a heated metal rod while he was still alive. Dr. Gliniecki could not be certain whether all the burns on Gates's body were inflicted while he was alive or postmortem, nor did he see any obvious evidence of forcible sodomy with a foreign object. Gliniecki opined Gates died primarily of asphyxiation and listed blunt force trauma as a contributing cause of death.[2]

---

[2] Brothers, Yancy and Persons were tried separately for their respective roles in Gates's homicide. We reversed Brothers's first degree murder conviction in *People v. Brothers* (Dec. 12, 2011, B225376) [nonpub. opn.] based on instructional error and

3

### 3. *Jury Instructions, Verdict and Sentence*

The jury was instructed with CALCRIM Nos. 520 (murder); 521 (degrees of murder); 540A and 540B (first degree felony murder based on torture or aiding and abetting torture); 400 and 401 (general principles of aiding and abetting); 402 (murder as a natural and probable consequence of torture); 810 (elements of torture); 570 (voluntary manslaughter based on killing in the heat of passion); and 522 (provocation reducing first degree murder to second degree murder or voluntary manslaughter).

The jury found Persons guilty of murder and torture and found the murder to be in the first degree. After Persons waived his right to a jury trial on the prior conviction and prior prison term enhancement allegations, the court found each of those special allegations true. Persons was sentenced, as a second-strike offender, to an aggregate state prison term of 61 years to life.[3]

## DISCUSSION

### 1. *The Trial Court Did Not Misstate the People's Burden of Proof*

In his closing argument defense counsel identified and explained various legal standards of proof to the jury—probable cause, preponderance of the evidence, clear and convincing evidence and beyond a reasonable doubt—apparently to underscore the heightened burden imposed by the reasonable doubt standard. In the course of this explanation, defense counsel told the jury that something as important as parental rights can be terminated by clear and convincing evidence but "beyond a reasonable doubt," the "highest standard of proof," is reserved for when we "judge one of our fellow citizens." The prosecutor objected, and the trial court told the jury "the instruction as to reasonable doubt is exactly as I gave it to you and as it appears in the instructions." "So you can

---

remanded the case for a new trial. We affirmed Yancy's second degree murder conviction in *People v. Yancy* (July 23, 2012, B228563) [nonpub opn.].

[3]     Persons's sentence consisted of 25 years to life for the murder, doubled to 50 years to life under the Three Strikes law, plus a consecutive five-year prior serious felony conviction enhancement and six consecutive one-year prior prison term enhancements. Sentence on the torture conviction was stayed pursuant to section 654.

4

read a lot into what is meant by abiding conviction and so forth. [4] That's maybe the beauty of the law. It gets flexibility for the jurors, but the instruction that I've read you on reasonable doubt is what prevails and not counsel's interpretation. "

Persons contends the court's statements suggesting the beyond-a-reasonable-doubt standard was "flexible" unconstitutionally lowered the standard of proof in this criminal case. (See *Victor v. Nebraska* (1994) 511 U.S. 1, 22 [114 S.Ct. 1239, 127 L.Ed.2d 583] ["Due Process Clause requires the government to prove a criminal defendant's guilt beyond a reasonable doubt, and the trial court must avoid defining reasonable doubt so as to lead the jury to convict on a lesser showing than due process requires"]; *People v. Aranda* (2012) 55 Cal.4th 342, 356; *People v. Mayo* (2006) 140 Cal.App.4th 535, 542.)

Contrary to Persons's contention, far from misstating the burden of proof, the court informed the jury that the only definition it was to rely on concerning reasonable doubt was the instruction the court had given to them. Persons does not challenge the propriety of CALCRIM No. 220 nor would such a challenge have merit. (See *People v. Aranda, supra,* 55 Cal.4th at p. 353 [court "satisfies" its statutory and constitutional obligation to instruct on principles of reasonable doubt by giving CALCRIM No. 220].) Nothing in the court's remarks admonishing the jury to consider the instructions given altered the definition of reasonable doubt in CALCRIM No. 220 or lowered the People's burden of proof.

2. *The Court Properly Instructed the Jury on the Intent Required for Torture*

"Every person who, with the intent to cause cruel or extreme pain and suffering for the purpose of revenge, extortion, persuasion, or for any sadistic purpose, inflicts great bodily injury as defined in Section 1202.7 upon the person of another, is guilty of torture. [¶] The crime of torture does not require any proof that the victim suffered pain." (§ 206.) The court instructed the jury with CALCRIM No. 810, which closely

---

4      The court instructed the jury with CALCRIM No. 220, which provides in part, "Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt. . . ."

tracks section 206 and restates the statutory language.[5]

Persons, whose counsel did not object to the instruction or request any amplifying language, contends CALCRIM No. 810 is ambiguous in that "extreme pain" could simply mean pain "beyond the ordinary or average" (see Webster's Encyclopedic Unabridged Dict. of the English Language (2001) p. 686 [defining "extreme"]) or it can mean something much more limited in scope, that is, "the utmost [pain] or exceedingly great in degree." (*Ibid.*; accord, American Heritage Dict. (2d College ed. 1992) p. 481 [defining extreme as "the greatest degree of intensity away from the norm"].) He argues the latter definition must have been what the voters had in mind when they approved section 206 as part of Proposition 115.[6] Because CALCRIM No. 810 permitted the jury to convict Persons of torture if they found an intent to inflict merely "immoderate" pain rather than the "utmost or an exceedingly great degree of pain and suffering," he argues, his conviction should be reversed.[7]

---

[5] In accordance with CALCRIM No. 810, the trial court instructed the jury that, to prove the defendant is guilty of torture, the People must establish: "1.  The defendant inflicted great bodily injury on someone else; [¶]  AND  [¶]  2.  When inflicting the injury, the defendant intended to cause cruel or extreme pain and suffering for the purpose of revenge, extortion, persuasion, or for any sadistic purpose.  [¶]  *Great bodily injury* means significant or substantial physical injury.  It is an injury that is greater than minor or moderate harm.  [¶]  It is not required that a victim actually suffer pain."

[6] Section 206 was enacted as part of Proposition 115, the "Crime Victims Justice Reform Act," approved by the voters in 1990. (See *Raven v. Deukmejian* (1990) 52 Cal.3d 336, 340; *People v. Barrera* (1993) 14 Cal.App.4th 1555, 1559.)  The ballot initiative was a response to *People v. Singleton* (1980) 112 Cal.App.3d 418, to remedy what the authors of the initiative viewed as an unacceptably light penalty for a heinous offense not resulting in the death of the victim.  (See *People v. Jung* (1999) 71 Cal.App.4th 1036, 1048 (dis. opn. of Armstrong, J.) [ballot pamphlet argument in favor of Proposition 115 stated the law would ensure "'that no criminal will ever again rape a young girl and hack off her arms, and serve only a minimal punishment, such as the 7-1/2 years Singleton served'"].)  Section 206.1, enacted together with section 206 as part of Proposition 115, made the new offense of torture punishable by imprisonment for life.

[7] We review assertions of instructional error de novo to determine whether the instruction accurately states the law.  (*People v. Cole* (2004) 33 Cal.4th 1158, 1210;

6

"The language of a statute defining a crime or defense is generally an appropriate and desirable basis for an instruction, and is ordinarily sufficient when the defendant fails to request amplification. If the jury would have no difficulty in understanding the statute without guidance, the court need do no more than instruct in statutory language." (*People v. Poggi* (1988) 45 Cal.3d 306, 327; accord, *People v. Page* (1980) 104 Cal.App.3d 569, 577; see *People v. Mayfield* (1997) 14 Cal.4th 668, 778 [if instruction is adequate, trial court is under no obligation to amplify or explain in absence of a request that it do so].) The court's sua sponte obligation to add clarifying language arises only when "a statutory term 'does not have a plain, unambiguous meaning' [citation], has a 'particular and restricted meaning,' or has a technical meaning peculiar to the law or an area of law." (*People v. Roberge* (2003) 29 Cal.4th 979, 988.)

In a similar context, the Supreme Court has held the term "extreme" has a "commonsense meaning" the jury may be expected to use" in applying instructions. (See *People v. Pearson* (2013) 56 Cal.4th 393, 478 ["'[t]he term[] "extreme" . . as used in [§] 190.3 ["extreme duress" or "extreme mental or emotional disturbance"] ha[s] [a] commonsense meaning[] that the jury may be expected to use in applying the instructions'"]; *People v. Williams* (2006) 40 Cal.4th 287, 338 [same].) In fact, numerous appellate courts have rejected the argument the language in section 206 is too vague or ambiguous to be properly understood. (See, e.g., *People v. Aguilar* (1997) 58 Cal.App.4th 1196, 1202 ["cruel pain" as used in § 206 is the equivalent of "extreme" or "severe" pain; accordingly, the phrase "'cruel or extreme pain and suffering' as used in [§] 206, is not unconstitutionally vague"]; *People v. Misa* (2006) 140 Cal.App.4th 837, 844 [rejecting contention "that an ordinary person cannot understand what conduct is prohibited by section 206"]; *People v. Vital* (1996) 45 Cal.App.4th 441, 444 [§ 206

---

*People v. Alvarez* (1996) 14 Cal.4th 155, 217-218.) When the instruction is challenged as ambiguous and subject to an erroneous interpretation by the jury, we review the instruction independently to determine whether there is a reasonable likelihood the jury understood the instruction in the manner asserted by the defendant. (*People v. Cross* (2008) 45 Cal.4th 58, 67-68.)

"plainly sets forth its requirements for torture"]; *People v. Barrera* (1993) 14 Cal.App.4th 1555, 1572 ["[t]he terms used in [§] 206, and therefore in CALJIC No. 9.90[8] are of such common usage that they are presumed to be within the understanding of reasonable jurors"].)  Those courts' persuasive analyses apply equally as well when the argument, as here, is shifted from challenging the language of the statute to challenging the jury instruction incorporating that language.  (See, e.g., *Aguilar,* at p. 1202 ["[w]e conclude CALJIC No. 9.90 correctly sets forth the elements of the crime of torture"]; *Barrera*, at p. 1572 [holding neither § 206 nor CALJIC No. 9.90 is vague or ambiguous; CALJIC No. 9.90 correctly states the elements of torture].)  Because "intent to cause cruel or extreme pain and suffering" does not require additional explanation beyond the commonsense meaning of "extreme" the jury may be expected to apply (see *People v. Williams, supra,* 40 Cal.4th at p. 338), the trial court was under no obligation to sua sponte provide any amplifying or clarifying language to supplement CALCRIM No. 810.

3. *The Prosecutor's Explanation of the Law of Provocation in Closing Argument Was Not Reversible Error*

A killing that would otherwise be murder is reduced to voluntary manslaughter if the defendant acted because of a sudden quarrel or in the heat of passion.  (*People v. Lasko* (2000) 23 Cal.4th 101, 110; *People v. Moye* (2009) 47 Cal.4th 537, 549.)  There are three elements to this provocation theory:  (1) the defendant was provoked; (2) as a result of the provocation, the defendant acted rashly and under the influence of intense emotion that obscured his or her reasoning or judgment; and (3) the provocation would have caused a person of average disposition to act rashly and without due deliberation, that is, from passion rather than from judgment.  (*People v. Breverman* (1998) 19 Cal.4th 142, 163; *Moye*, at p. 550.)

---

8    CALJIC No. 9.90, the predecessor pattern jury instruction to CALCRIM No. 810, similarly provides, "[t]he person inflicting the injury did so with specific intent to cause cruel or extreme pain and suffering [for the purpose of [revenge] [,] extortion[,] [persuasion]] [,] [or] [for any sadistic purpose]."  (Brackets in original.)

During closing argument, the prosecutor properly identified the three elements necessary to reduce a murder to voluntary manslaughter based on provocation. The prosecutor then stated, as to the third element, "hearing allegations of child molestation might cause someone to act rashly, might cause someone to become very upset. But would it cause someone to immediately start tying, tying up someone, shove a ball in their mouth, to start dragging them out?" Defense counsel objected. The court overruled the objection, stating the prosecutor's interpretation of the third element was "argument" and defense counsel would be able to counter with his own argument. The prosecutor then continued, "Would a reasonable person of average disposition behave in the way [Persons] behaved that night? I say no way." Defense counsel did not discuss the instructions pertaining to adequate provocation during his closing argument.

Persons now contends the prosecutor misstated the law when, after acknowledging allegations of child molestation may provoke a reasonable person to act rashly, he then argued Persons's actions in response to what may have been sufficient provocation were unreasonable. (See *People v. Bell* (1989) 49 Cal.3d 502, 538 [during closing argument counsel has "broad discretion in discussing the legal and factual merits of a case," but "it is improper to misstate the law"]; *People v. Mendoza* (2007) 42 Cal.4th 686, 702 [same].) He contends that, in determining whether a killer's reason was obscured by provocation sufficient to negate malice, "the focus is on the provocation—the surrounding circumstances—and whether it was sufficient to cause a reasonable person to act rashly. How the killer responded to the provocation and the reasonableness of the response is not relevant to sudden quarrel or heat of passion." (*People v. Najera* (2006) 138 Cal.App.4th 212, 223; see *ibid.* [prosecutor misstated law of provocation during closing argument when he stated the offense would be voluntary manslaughter only if "*a reasonable person would do what the defendant did*" in response to the particular provocation shown].)

The People argue *Najera* was wrongly decided and conflicts with statements in other cases suggesting the provocation must be sufficient not only to cause the defendant to act rashly, but also to incite the defendant "to homicidal conduct." (*People v. Lee*

9

(1999) 20 Cal.4th 47, 59; accord, *People v. Waidla* (2000) 22 Cal.4th 690, 740, fn. 17 [concluding there was insufficient evidence that "Viivi so provoked Waidla as adequately to arouse a reasonable person to make the kind of sudden and devastating attack that he participated in making"].)

We need not resolve the question whether the prosecutor misstated the law of provocation[9] because, even if he did, the error was harmless. (See *People v. Ochoa* (1998) 19 Cal.4th 353, 427 [when claim of misconduct is based on arguments or comments the prosecutor made to the jury, the question of prejudice is determined by "'whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion'"]; *People v. Morales* (2001) 25 Cal.4th 34, 47 [same].)

The jury was instructed with CALCRIM No. 570, which follows *Najera's* interpretation of the requisite provocation: "In deciding whether the provocation was sufficient, consider whether a person of average disposition, in the same situation and knowing the same facts, would have reacted from passion rather than from judgment."[10] The jury was also instructed with CALCRIM 200 informing them they must follow the court's instructions even if they conflict with "the attorney's comments on the law." We presume the jury understood and followed the instructions given. (*People v. Yeoman* (2003) 31 Cal.4th 93, 139.)

Furthermore, the jury found Persons guilty of torture. Accordingly, under the felony murder rule, a properly instructed jury was required to (and did) find Persons guilty of murder in the first degree. Provocation is irrelevant to a conviction based on

---

9    Whether the law of provocation considers exclusively the effect on a reasonable person's judgment under the circumstances or extends as well to the reasonableness of his or her actions in response to those circumstances is currently pending before the Supreme Court. (See *People v. Beltran* (Apr. 25, 2012, S192644) __ Cal.4th __ [2012 Cal. Lexis 3937].)

10    The use note to CALCRIM No. 570 specifically cites *People v. Najera, supra,* 138 Cal.App.4th 212, as support for the instruction, noting "the average person need not have been provoked to kill, just to act rashly and without deliberation."

felony murder. (See *People v. Seaton* (2001) 26 Cal.4th 598, 665 [because malice is not an element of felony murder, provocation is irrelevant to that theory; "under the felony-murder rule, a killing in the commission of certain felonies specified in [§] 189 is first degree murder" whether or not defendant acted with malice]; *People v. Cavitt* (2004) 33 Cal.4th 187, 197 [same]; CALCRIM No. 522 ["[p]rovocation does not apply to a prosecution under a theory of felony murder"]; § 189 [listing torture as a qualifying offense for first degree felony murder"]; cf. *People v. Visciotti* (1992) 2 Cal.4th 1, 57, fn. 25 ["The jury found under properly given instructions that the murder was intentional, and was committed in the perpetration of robbery, thus establishing that the killing was murder of the first degree under the felony-murder rule and [§] 189 without the necessity of proving malice. Any error in failing to instruct on voluntary manslaughter was harmless."].)

4. *Jury Instructions on Aiding and Abetting a Premeditated Murder Were Not Improper; Any Error Was Harmless in Any Event*

The trial court instructed the jury with CALCRIM No. 400 (aiding and abetting), telling the jury, "A person may be guilty of a crime in two ways. One, he or she may have directly committed the crime. I will call that person the perpetrator. Two, he or she may have aided and abetted a perpetrator who directly committed the crime. [¶] A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator." CALCRIM No. 401 explained, "Someone *aids and abets* a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime." The court also instructed the jury with CALCRIM Nos. 520 and 521 (requirements of first degree premeditated murder), telling the jury, "The defendant is guilty of first degree murder if the People have proved that he acted willfully, deliberately and with premeditation."

Persons contends this combination of jury instructions was legally deficient because it permitted the jury to find him guilty of aiding and abetting a premeditated murder even if it found he did not personally deliberate. (See *People v. McCoy* (2001)

11

25 Cal.4th 1111, 1118 [when offense charged is murder, jury should be instructed that the degree of murder is dependent on the defendant's own mens rea, not that of his or her coparticipant]; *People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1164-1165 (*Samaniego*) [same]; *People v. Nero* (2010) 181 Cal.App.4th 504, 518 (*Nero*).) Although we take issue with the accuracy of Persons's characterization of the instructions given,[11] we need not address it because any error was plainly harmless even under the stringent beyond-a-reasonable-doubt standard of *Chapman v. California* (1967) 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705]. (See *People v. Delgado* (2013) 56 Cal.4th 480, 490 ["[w]hen an instruction tells the jury it may convict the defendant on a theory he or she aided and abetted in commission of the offense, but omits one or more of that theory's necessary findings, the error may be deemed equivalent to omitting an element of a charged offense," an error evaluated under the *Chapman* standard].)

The jury was correctly informed, under both the natural and probable consequences doctrine and the felony murder rule, the only specific intent it was required to find to convict Persons of first degree murder was the intent to commit torture. (See, e.g., *People v. Pearson* (2012) 53 Cal.4th 306, 321 [natural and probable consequences rule "extends accomplice liability to the perpetrator's reasonably foreseeable crimes regardless of whether the defendant personally harbored the specific intent required for the commission of the charged, nontarget offense"]; *McCoy, supra,* 25 Cal.4th at p. 1118, fn. 1 [analysis concerning necessity of accomplice sharing same mens rea of perpetrator in connection with the homicide does not apply to natural and probable consequences doctrine, which looks to whether accomplice possesses specific intent to commit target offense]; *People v. Cavitt, supra,* 33 Cal.4th at p. 197 [the mental state required for

---

11     In contrast to the instruction at issue in *Samaniego* and *Nero,* the jury was not told if it found Persons had aided and abetted the homicide, he and the actual perpetrator are "equally guilty" as principals in the offense. (See *Samaniego, supra,* 172 Cal.App.4th at p. 1164; *Nero, supra,* 181 Cal.App.4th at p. 516.). Rather, the jury was properly instructed it could find Persons guilty of aiding and abetting premeditated murder only if he knew the perpetrator's unlawful purpose and specifically intended to aid in that purpose. This is a correct pronouncement of the law.

12

felony murder "is simply the specific intent to commit the underlying felony"]; see also CALCRIM Nos. 402 [natural and probable consequences] and 540A and 540B [felony murder].)  The jury necessarily found Persons possessed the specific intent to commit torture when it convicted him of that crime.  Accordingly, under either the natural and probable cause theory or the felony murder rule, it properly found him guilty of first degree murder.  Any error in the instructions on the specific intent required to convict for aiding and abetting a premeditated murder (a separate theory for first degree murder) is irrelevant to the verdict.

## DISPOSITION

The judgment is affirmed.

PERLUSS, P. J.

We concur:

WOODS, J.

ZELON, J.

13